# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTONIO PROPHET,**

      **Petitioner,**

**v.**                                                        **Civil Action No. 1:16cv178**
                                                             **(Judge Keeley)**

**DAVID BALLARD, Warden,**

      **Respondent.**

## <u>REPORT AND RECOMMENDATION</u>

This case was initiated by the *pro se* Petitioner on August 24, 2016, by the filing of a petition for habeas corpus pursuant to 28 U.S.C. § 2254.  The petition was not on a court-approved form and comprised 806 pages, including memoranda and attachments. Along with the petition, Petitioner paid the filing fee and filed a Motion for Expedited Review. ECF Nos. 2 & 3. The following day, pursuant to Rule 4 of the Federal Rules Governing Section 2254 Proceedings in the United States District Court, Magistrate Judge James E. Seibert made a preliminary review of the petition and found that summary dismissal was not warranted at that time.  Accordingly, the Respondent was directed to file an answer to the petition. ECF No. 5.  On August 29, 2016, the Respondent moved for an extension of time.  ECF No. 7. By Order entered the same day, Petitioner was directed to show cause; his over-large § 2254 petition was struck for failure to comply with the Local Rules of Prisoner Litigation Procedure ("LR PL P"); the attachments to the petition were struck; Petitioner's motion for expedited review was denied; and the prior order directing Respondent to answer was vacated.  ECF No. 10.  By separate Order entered the same day, Respondent's motion for an extension was denied as moot.  ECF No. 9.

On September 2, 2016, Petitioner refiled his § 2254 petition, with a 7-page typed "addendum" and three attached exhibits;[1] along with a motion to proceed as a pauper; a copy of his Prisoner Trust Account Report; a response to the order to show cause; a Motion for Leave to Type 2254 on the Uploaded Court-Approved Form; and a Motion for Leave to File Excess Pages.  ECF Nos. 13, 14, 15, 16, 17, & 18.

On October 31, 2016, along with a Motion for the Court to Forthwith Direct the Respondent to File an Answer to Petitioner's Initial or Modified 2254 Petition [ECF No. 20], Petitioner filed a Renewed Motion for Expedited Review of his § 2254 petition.  ECF No. 21. By Order entered November 2, 2016, Petitioner's motion to type his § 2254 petition on an uploaded court approved form and his motion for leave to file excess pages were granted, and Petitioner was directed to file a memorandum of law, if any, not to exceed fifty pages. ECF No. 22. By separate Order entered the same day, Petitioner's renewed motion for expedited review was denied. ECF No. 23.

On November 9, 2016, Petitioner filed a 56-page Memorandum of Law in support of his § 2254 petition. ECF No. 25.

On December 2, 2016, Petitioner filed another Renewed Motion for the Court to Forthwith Direct the Respondent to File an Answer.  ECF No. 26.  On December 5, 2016, the Respondent filed a response in opposition, along with a motion to strike Petitioner's memorandum of law.  ECF No. 27.  Petitioner filed a reply on December 8, 2017. ECF No. 28.

---

[1] Petitioner attached copies of: a June 21, 2016 Memorandum Decision of the West Virginia Supreme Court of Appeals on the appeal of three Circuit Court of Berkeley County orders entered in his state habeas petition; a June 24, 2015 Order from the Circuit Court of Berkeley County, dismissing certain grounds in his state habeas petition; and an October 28, 2015 Order from the Circuit Court of Berkeley County, denying his state habeas petition.  ECF Nos. 13-2, 13-3, and 13-4.

2

On January 18, 2017, Petitioner filed a Renewed Motion for the Court to Forthwith Direct the Respondent to File an Answer. ECF No. 29.  On March 21, 2017, Petitioner filed a Motion for the District Judge to Direct the Magistrate Judge to Forthwith Order the Respondent to File an Answer.  ECF No. 35.  By Order entered March 29, 2017, Petitioner's motion and renewed motion to direct the Respondent to file an answer were denied; Respondent's motion to strike Petitioner's memorandum of law was granted, and Petitioner was again directed to refile his memorandum in support in compliance with the LR PL P. See ECF No. 36. By Order entered March 30, 2017, Petitioner's Motion for the District Judge to Direct the Magistrate Judge to Forthwith Order the Respondent to File an Answer was denied as moot. ECF No. 37.  On March 31, 2017, Petitioner filed a response to the March 29, 2017 Order, withdrawing his Memorandum of law; waiving the right to file another; and requesting the Court to forthwith direct the Respondent to file an answer only to his § 2254 petition. ECF No. 38.  On April 27, 2017, Petitioner filed a Motion for the Court to Forthwith Order the Respondent to File an Answer and to Expedite Review.  ECF No. 41.

By Order entered May 2, 2017, the Respondent was directed to show cause why the petition should not be granted; Petitioner's motion for the court to forthwith direct the Respondent to file an answer was denied as moot, and Petitioner's motion to expedite review was denied as premature.  ECF No. 42. That same day, the Respondent moved for an extension of time to file an answer. ECF No. 43.  By Order entered May 3, 2017, Respondent's motion for an extension was granted.  ECF No. 44.  On July 24, 2017, Respondent filed a second motion for an extension of time. ECF No. 48.  On July 27, 2017, Petitioner filed an objection to Respondent's second motion for an extension.  ECF No. 49.  On July 27, 2017, Respondent filed a reply to Petitioner's objection. ECF No. 50.  On August 16, 2017, Respondent filed a motion for leave to

file out of time; a Response; a Motion to Dismiss for Failure to Exhaust; a Memorandum in Support; and a Motion for leave to file excess pages.  ECF Nos. 51, 52, 53, 55, & 54.  By Order entered August 21, 2017, Respondent's motion for leave to file out of time was granted, and Respondent's prior motion for an extension of time was denied as moot.  ECF No. 56. By separate Order entered the same day, Respondent's motion to exceed the page limits was granted. ECF No. 57.  Because Petitioner was proceeding *pro se*, on August 22, 2017, an Roseboro Notice was entered.  ECF No. 58.  On August 28, 2017, Petitioner filed a Response in Opposition to Respondent's Motion to Dismiss and a Reply; the two documents together exceeded the LR PL P limitation of pages by 5 pages and were filed without a motion to exceed the page limit.  ECF Nos. 61 & 62.  Along with those two responses, Petitioner filed another Motion for the Court to Expedite Review of the Matter of Exhaustion and Order the Respondent to Forthwith File an Answer Addressing the Allegations in Petitioner's § 2254 Petition. ECF No. 63. By Order entered August 30, 2017, Petitioner's third renewed motion for expedited review was denied as premature.  ECF No. 64.

By Order entered September 15, 2017, this case was reassigned from Magistrate Judge James E. Seibert to Magistrate Judge Michael J. Aloi.

On September 27, 2017, Petitioner filed a Clarified Motion for the Court to Expedite Review of the Matter of Exhaustion and Order the Respondent to Forthwith File an Answer Addressing the Allegations in Petitioner's § 2254 Petition.  ECF No. 66. On November 2, 2017, Petitioner filed a Motion for the District Judge to Direct the Magistrate Judge to Expedite Review of the Matter of Exhaustion and Order the Respondent to Forthwith File an Answer Addressing the Allegations in Petitioner's § 2254 Petition. ECF No. 67.

Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 2.

## I.   Factual and Procedural Background

### A.   Petitioner's Conviction and Sentence

On June 5, 2010, Petitioner spent the night with his girlfriend, Angela Devonshire, and her two young children in her apartment above her parents' garage in Berkeley County, West Virginia. See West Virginia Supreme Court of Appeals' ("WVSCA") June 5, 2014 opinion on direct appeal, ECF No. 52-15 at 7.  The garage apartment was located at the end of Devonshire's parents' driveway, approximately 75 yards from their home. Id.  At some point before 4:36 a.m., Petitioner slit Ms. Devonshire's throat and then burned the apartment with Ms. Devonshire and her three-year-old son Andre still inside.[2] Id. at 7 - 8. Petitioner carried Ms. Devonshire's other son, Daronte, an infant approximately six weeks old, out of the apartment and over to Devonshire's parents' nearby patio, where he left him,[3] unattended but alive. Id. at 8 & 12. The infant was uninjured;[4] however, blood spatter on his clothing was later confirmed to be Petitioner's. Id. at 8. Petitioner, using an assumed name, attempted to flee to Georgia [ECF No. 52-20 at 2], but was apprehended in North Carolina on June 17, 2010. ECF No. 52-15 at 8; see also ECF No. 52-5 at 50 – 51 & 53. At the time of his arrest, Petitioner's hands exhibited defensive injuries. ECF No. 52-15 at 8.

---

[2] At trial, the medical examiner testified that both were dead before the fire started; Angela's throat was slit so deeply that her airway was transected and she had bled to death; her body was so charred, it only weighed 60 pounds; Andre's body was too badly burned to determine a cause of death. See ECF No. 52-29 at 95 – 101. As noted by the WVSCA in its *per curiam* opinion on Petitioner's direct appeal, "[a] reasonable person could infer that after killing Angela, the petitioner killed Andre because the petitioner knew that Andre, but not infant Daronte, could identify him, which is evidence of premeditation." See ECF No. 52-15 at 19.

[3] At trial, Prophet testified that he left the baby on a lawn chair on the patio in back of the home. ECF No. 52-30 at 309.

[4] Petitioner was not the father of either child.

Accordingly, on February 17, 2011, a grand jury sitting within the Circuit Court of Berkeley County, West Virginia ("circuit court") indicted Petitioner in Criminal Case No. 11-F-67 on two counts of first-degree murder, for the deaths of Ms. Devonshire and her son, and on one count of first-degree arson. ECF No. 52-1.

At Petitioner's July, 2012 trial,[5] the State of West Virginia ("state") introduced witnesses who testified that Petitioner had a cut on his neck and blood on his clothing on the morning following the murder/arson; that Petitioner requested clothes, a cell phone, and money from an ex-girlfriend on the morning of the murder/arson; that he sought transportation out of state; that he requested help from a friend after texting him that he "was in a situation;" and that blood on the infant's clothing matched Petitioner's. ECF No. 52-15 at 8-9.

Petitioner testified in his own defense, alleging that the deaths were the result of a drug-related hit targeting Ms. Devonshire, purportedly because of money she allegedly owed one Joseph Medina.  See id. at 10 – 12. Specifically, Petitioner testified that two men broke into Ms. Devonshire's apartment that night and slit her and her three-year-old son's throats while Petitioner attempted to fight them off. Id.; see also ECF No. 52-30 at 300 - 01. However, Petitioner's testimony opened the door to a rigorous cross-examination, wherein the State identified similarities in Petitioner's story to fictional elements contained within a novel Petitioner wrote prior to the killings. See A. Prophet, Enter the Fire: Seven Days in the Life, PublishAmerica[6] (2008).  ECF No. 52-15 at 12-13.

---

[5] Petitioner's trial counsel were B. Craig Manford and Christopher Prezioso.

[6] See PublishAmerica, *available on line at* < http://www.publishamerica.com/ >

On July 20, 2012, after a 5-day jury trial, Petitioner was convicted on all charges; the jury recommended that he be sentenced to life without the possibility of parole. ECF No. 52-15 at 14; see also ECF No. 52-10.

At a September 10, 2012 hearing, the circuit court denied Petitioner's post-trial motions for acquittal and a new trial and sentenced him to a determinate term of life without the possibility of parole on each murder conviction, and to a determinate term of twenty (20) years, the maximum sentence[7] on the arson conviction, with all sentences to run consecutively. ECF No. 52-12.

## B.  Direct Appeal

On appeal,[8] in WVSCA Case No. 12-1389, Petitioner raised these seven grounds of error:[9]

---

[7] At sentencing, the court noted that the maximum sentence was imposed on the arson count because Prophet had "at least two prior felony convictions and an extensive criminal history dating back . . . to at least 1994." ECF No.52-38 at 42.

[8] On appeal, Petitioner was represented by Christopher Prezioso, who had served as one of his two trial counsel.

[9] In the interest of clarity and expediency, given the size of the record, the undersigned has endeavored, to the extent possible, to address Petitioner's claims in roughly the numerical fashion in which they were raised; however, because the claims were all numbered differently by the parties and in the various state court pleadings, they have been renumbered here so that they are all at least consistent.

Petitioner's filings in state and federal court are voluminous, tortuous, and extremely repetitive. Petitioner frequently raises identical claims, alleging the same grounds as state error, trial court error, prosecutorial error, and then error of counsel, often with duplicative or redundant subparts, abandoning some and raising others in subsequent pleadings, frequently rewording and enumerating them differently each time. As just one example: Petitioner's Ground 4 claim (state impeached his credibility by attacking his post-Miranda silence); his Ground 7(a) claim (prosecutorial misconduct for attacking his constitutional right to silence); Ground 8(e) (trial court's bias in permitting prosecutor to attack his post-Miranda silence); and his Ground  10(d), (e), (f), (g), (h), (i), (j), (k), and (l) claims (trial counsel's failure to object to prosecutor's improper questioning about his post-Miranda silence), are all essentially the same claim.  Further, most of his claims have multiple subparts and those subparts often have numerous subparts of their own. To add a further level of redundancy and complexity, Petitioner repeatedly uses "catch-all" claims in his *pro se* and amended state habeas petitions, on their  appeal to the WVSCA, and in the instant petition, to ensure that each and every claim that otherwise might have been omitted is again reconsidered. His amended habeas petition, which otherwise would have superseded the *pro se* petition, [see Young v. City of Mt. Ranier, 238 F.3d 567, 573 (4th Cir. 2001)] includes an "incorporation by reference" of the entire *pro se* petition, to ensure that each and every claim made there was also reconsidered in the amended petition.

**1)** The circuit court committed reversible error when it failed to grant a judgment of acquittal at the close of the State's case-in-chief and again at the conclusion of all the evidence. See ECF No. 52-14 at 8.

**2)** The circuit court committed reversible error when it failed to grant Petitioner's motion for a new trial as the use of Petitioner's previously authored fictional novel was improper and unduly prejudicial. Id. at 39.

**3)** The circuit court committed reversible error when it failed to grant Petitioner's motion for a new trial as the State improperly used Petitioner's post arrest/pre-trial silence to impeach Petitioner. Id. at 45.

**4)** The circuit court committed reversible error when it failed to grant Petitioner's motion for a new trial after the trial court refused to give a jury instruction as proffered by defendant prior to the case being submitted to the jury. Id. at 48.

**5)** The circuit court committed reversible error when it failed to grant Petitioner's motion for new trial and motion for judgment of acquittal as the State knowingly allowed Joseph Medina to present false and perjured testimony [id. at 50 – 58][regarding]:

   a) Petitioner's alleged confession [id. at 51];

   b) Petitioner's change of story [id. at 52];

   c) Petitioner's phone confession was impossible [id. at 52 -53];

   d) the 911 records [id. at 53 – 54];

   e) Medina's statement that "'they' would kill this child [id. at 54];"

   f) complete impeachment establishing false testimony [id. at 54 – 55];

   g) Medina's claim he refused to speak with the police without an attorney [id. at 55 - 57]; and

   h) false testimony regarding Petitioner's flight to Virginia. Id. at 57 – 58.

**6)** Petitioner's conviction should be reversed as his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct, [including]:

   a) using her position to undermine credibility and bolster the state's witnesses [id. at 58 - 60];

   b) attacking the Petitioner's constitutional right to silence [id. at 60 - 61];

8

c) knowingly eliciting and using false testimony [state's witness Joseph Medina] [id. at 61];

d) [introducing] intentionally irrelevant and highly prejudicial evidence [Petitioner's fictional novel] after stipulating in writing not to present the same [id. at 61 - 62];

e) willfully and deliberately misstating and misrepresenting scenes from Petitioner's novel for the express purpose of illicitly prejudicing Petitioner [id. at 62 – 63];

f) intentionally misquoting witness testimony [id. at 63 - 65];

g) attacking Petitioner regarding his legal name change [id. at 65 -66];

h) inundating the trial with improper remarks, including (1) calling Petitioner a wolf in sheep's clothing; (2) bringing up Petitioner's African-American "culture;" (3) referencing the fact that no soot was found on the infant; (4) improper comments in closing argument; (5) stating that both victims died of cut throats when there was no evidence to support that; (6) in closing, stating that Joseph Medina had "ratted out" Petitioner; (7) in closing, purposely misrepresenting the title of Petitioner's novel to mislead and inflame the jury; (8) in closing, suggesting that writers (like Petitioner) concoct believable stories; (9) in closing, suggesting that if the jury "bought" Petitioner's version of events, they were buying his book; (10) using her position to discredit Petitioner; and (11) telling the jury "don't let him get away with it." Id. at 66 – 72.

7) Petitioner's conviction should be reversed as his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct [id. at 72][when the court]: Id. at 72.

a) in open court, made a very passionate and prejudicial argument expressing his opinion of the Petitioner's guilt and culpability in the crimes he had been charged [id. at 72 - 73];

b) coerced a state witness [Joseph Medina] into testifying for the state at Petitioner's trail by rejecting a plea deal the state had offered Medina two years earlier, to pressure Medina into offering more information adverse to Petitioner [id. at 73 – 74];

c) during Petitioner's cross-examination, permitting the prosecutor to impeach Petitioner by attacking his constitutional right to remain silent [id. at 75];

d) during Petitioner's cross-examination, permitting the state to impeach Petitioner's testimony by permitting the prosecutor to present irrelevant, unduly prejudicial, highly inflammatory and improper impeachment evidence in the form of a novel Petitioner had written earlier [id. at 75 – 77];

e) during Petitioner's testimony, the trial judge did not look at him attentively the way he looked at other witnesses, creating the visual impression to those watching that he neither liked nor believed Petitioner; the only time the court looked at Petitioner was to "scowl at, interrupt, or chastise the Petitioner [id. at 77];

f) during Petitioner's cross exam, accusing Petitioner, in front of the jury, of being evasive and argumentative in his answers to the prosecutor [id.]; and

g) throughout the pretrial motions hearings and throughout the trial itself, the court consistently attempted to guide and advise the prosecutor on how to conduct her case against Petitioner. Id. at 78.

By *per curiam* opinion entered on June 5, 2014, the WVSCA affirmed Petitioner's conviction after finding his claims to be without merit. ECF No. 52-15. Prophet petitioned the WVSCA for rehearing; the WVSCA denied the same on August 26, 2014.  See ECF No. 52-16 at 3 - 4. The WVSCA finalized its decision via mandate issued September 2, 2014. ECF No. 52 - 15 at 32.  Prophet then petitioned the United States Supreme Court for a writ of *certiorari*; the petition was denied on November 17, 2014. Prophet v West Virginia, 135 S.Ct 683, 684, 190 L.Ed. 396 (2014). On December 4, 2014, Prophet filed a petition for rehearing, seeking the United States Supreme Court's reconsideration of its denial of *certiorari*; on January 12, 2015, the Supreme Court denied the petition for rehearing. Prophet v. West Virginia, 135 S.Ct. 1035, 190 L.Ed.2d 900 (2015).[10]

## C.  Petitioner's State Habeas Petition

---

[10] See: docket in Prophet's United States Supreme Court petition for writ of *certiorari* of the WVSCA's decision affirming the Berkeley County Circuit Court in his direct appeal, in Case No. 14-6270, *available at*: < https://www.supremecourt.gov/search.aspx?filename=/docketfiles/14-6270.htm >

On or about February 2, 2015, Petitioner filed a *pro se* habeas petition in the Circuit Court of Berkeley County, West Virginia, Case No. 15-C-66. <u>See</u> ECF No. 52-16 at 15. Therein, Petitioner raised thirteen (13) grounds for relief, including nine (9) sub-grounds of prosecutorial misconduct; nine (9) sub-grounds of judicial misconduct; seven (7) sub-grounds of ineffective assistance of counsel ("IAC"); and two (2) sub-grounds of IAC of appellate counsel. <u>See</u> ECF No. 52-16 at 5 – 13 & 25 - 165. Those claims were:

**<u>Ground 1</u>**: The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution' s Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the prejudicial pre-trial and trial publicity that infected his trial. ECF No. 52-16 at 48.

**<u>Ground 2</u>**: The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court prejudicially refused to strike two challenged jurors for cause. <u>Id.</u> at 50.

**<u>Ground 3</u>**: The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the prosecutor's knowing use of false testimony used to obtain the Petitioner's conviction[][<u>id.</u> at 59][specifically]:

a) Joseph Medina's claim of not having spoken to the police initially, and without the presence of an attorney [<u>id.</u> at 60]; and

b) Joseph Medina's claim that Petitioner had confessed to the crime in question. <u>Id.</u> at 65.

**<u>Ground 4</u>**: The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, to not be compelled to be a witness against himself, to equal protection of the laws, to present a defense, to the assistance of counsel, and to the access of evidence - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article Ill, §§ 3, *5,* 10 and 14, when the state impeached the Petitioner's credibility by fundamentally unfair means[][<u>id.</u> at 68][when the prosecutor]:

a) repeatedly questioned and made argument regarding Petitioner's post-<u>Miranda</u> silence [<u>id.</u> at 70];

11

b) repeatedly asserted that Petitioner's due process-mandated entitlement to discovery evidence aided the Petitioner in deceiving the jury [id. at 75];

c) implicitly and illicitly utilized the privileges of the attorney-client relationship to Petitioner's detriment [id. at 77]; and

d) repeatedly accused Petitioner of having contemporaneously committed an uncharged and unindicted felony crime during the trial. Id. at 78.

**Ground 5**: The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, and to the equal protection of the laws - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when the state rendered the Petitioner's trial fundamentally unfair by introducing at trial legally inadmissible and unduly prejudicial evidence in the form of a fictional novel previously authored by the Petitioner. Id. at 79.

**Ground 6**: The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial Jury, and to present a complete defense-were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court refused to give the jury an instruction on the defense theory of the case. Id. at 91.

**Ground 7**: The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 5, 10 and 14, when the prosecutor engaged in prosecutorial misconduct and made numerous improper remarks before the jury[][id. at 94][specifically, by]:

a) attacking the Petitioner's constitutionally protected rights [id. at 96];

b) using her position as an agent of the state to undermine the credibility of Petitioner and to bolster the state's witnesses [id.];

c)  knowingly utilizing the false testimony of Joseph Medina [id. at 97];

d) introducing, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence into the trial (in the form of Petitioner's previously-written novel) [id. at 98];

e) knowingly and deliberately misstated, misrepresented, and distorted scenes and narratives from the Petitioner's novel for the obvious purpose of prejudicing Petitioner [id.];

f) deliberately misstating and misquoting witness testimony [id. at 100];

g) repeatedly argued supposed facts not in evidence [id. at 106];

h) inundated the trial with improper remarks [id. at 107];  and

i) engaged in various other forms of misconduct which were more subtle though no less prejudicial to Petitioner. Id. at 111.

**Ground 8**: The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the laws, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, Sections 3, 5, 10 and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury[][id. at 115][when]:

a) prior to trial, it made an improper, passionate, and extremely prejudicial and biased remark in open court, regarding the court's opinion of Petitioner's guilt and culpability regarding the crime at issue [id. at 117];

b) prior to trial, it deliberately, improperly, and prejudicially manipulated or otherwise coerced a state witness into artificially strengthening the state's case against Petitioner [id. at 118 – 19];

c) during jury selection, it improperly and prejudicially refusing to strike two potential jurors for cause, one of whom ended up on Petitioner's jury [id. at 120];

d) during Petitioner's cross-examination, it permitted the prosecutor to present, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out [id.];

e) during Petitioner's cross-examination, it permitted the prosecutor, over defense objection to unlawfully attack Petitioner's post-Miranda silence [id. at 123];

f) during Petitioner's cross-examination, it accused Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor [id. at 124];

g) by failing to dutifully intervene to limit and attempt the prosecutor's improprieties during closing argument [id. at 130];

h) by attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against Petitioner [id. at 131]; and

i) by engaging in other more subtle, though no less prejudicial conduct to the detriment of Petitioner. Id. at 133.

**Ground 9**: The Petitioner's state and federal constitutional rights - to due process of law, to equal protection of the laws, to not have cruel and unusual punishment inflicted on him, and to

a fair trial - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and Under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when he was convicted by evidence insufficient to establish his guilt beyond a reasonable doubt for every element of the charged crime[s]. Id. at 136.

**Ground 10**: The Petitioner's state and federal constitutional rights - to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of state-appointed trial counsel[][id. at 143][by their failure to]:

a) thoroughly and independently investigate the crime at issue [id. at 144];

b) file a pretrial motion to suppress the introduction of Petitioner's violent fictional novel entitled "Enter the Fire: Seven Days in the Life [id. at 145];"

c) request that a limiting instruction be given to the jury that the Petitioner's fictional novel was to be limited to a specific and legitimate purpose to impeach, and was not to be used as evidence of a material or substantive fact [id. at 146];

d) incorporate each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of this petition [id. at 147];

e) continuously and strenuously object to, and move for a mistrial for, the prosecutor's improper and unconstitutional attacking of Petitioner's post-Miranda/pre-trial silence [id.];

f) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional remarks made during closing arguments [id. at 150];

g) object to, and move for a mistrial for, the trial court's many instances of blatant bias and misconduct [id. at 152]; and by failing to

h) object to a myriad of prejudicial circumstances throughout the entirety of the trial. Id. at 153.

**Ground 11**: The Petitioner's state and federal constitutional rights - to due process of law, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the cumulative effect of multiple trial errors[][id. at 156][said errors consisting of]:

a) each and every individual and collective assertion and argument of error made in Grounds 1 – 10 of **this petition** [id. at 157];

b) the prosecutor's failing to provide pretrial notice of its intent to use 404(b) evidence against the Petitioner [id.];

c) the trial court's failure to change the venue of trial due to massive pre-trial publicity adverse to Petitioner [id.]; and

d) state witness Lt. Harmison deliberately and unnecessarily informing the jury during his testimony that Petitioner was being held in the local regional jail. Id.

**Ground 12**: The Petitioner's state and federal constitutional rights - to due process of law, and to the effective assistance of counsel - were violated, under the United States Constitution's  Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and assistance of his state-appointed appellate counsel[][id. at 158][by failing to]:

a) present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented [id. at 159]; and failing to

b) present federal constitutional questions to the WVSCA, or citing to United States Supreme Court constitutional law in Petitioner's direct appeal. Id.

**Ground 13**: The Petitioner's state and federal constitutional rights - to due process of law, and to the equal protection of the law - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3 and 10, and Article VIII, § 4, when the WVSCA violated its state constitution so as to deny the Petitioner a state-created liberty interest, and when it failed to provide the Petitioner meaningful  appellate review. Id. at 160.

Thereafter, on February 11, 2015, the circuit court appointed counsel[11] and directed

Petitioner to file an amended petition containing all of his claims. ECF No. 52-17.

On May 12, 2015, Petitioner filed his amended petition raising the following thirteen

grounds for relief:

**1)** Petitioner asserts he was deprived of his Federal and State Constitutional [rights] to Due Process and to a fair trial due to the cumulative effect of myriad trial errors. ECF No. 52-18 at 44.

a) Petitioner asserts that the cumulative errors set forth below in Assignment of Errors 2 – 11 denied his right to Due Process and to a fair trial. Id.

b) Petitioner asserts that the State's failure to provide notice regarding its intent to introduce 404(b) evidence against him denied his right to Due Process and to a fair trial. Id.

---

[11] Attorney Lisa Green was appointed as Petitioner state habeas counsel. ECF No. 52-17 at 2.

c) Petitioner asserts that the trial court's failure to change the venue of the trial due to wide-spread pre-trial publicity adverse to Petitioner denied his right to Due Process and to a fair trial. Id.

d) Petitioner asserts that the testimony of State witness, Lieutenant Harmison [to the effect] that Petitioner was incarcerated at the time of trial denied his right to Due Process and to a fair trial. Id.

**2)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process and to a fair trial by an impartial jury which was unduly influenced by pre-trial and trial publicity. Id. at 46.

**3)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process and to a fair trial by an impartial jury when the trial court failed to strike two jurors for cause. Id. at 48.

**4)** Petitioner asserts that he was deprived of his federal and state constitutional [rights] to due process and to a fair trial when the prosecutor used [the] false testimony of Joseph Medina. Id. at 54.

a) Petitioner asserts that the testimony of Joseph Medina that he refused to speak with law enforcement until he had a lawyer was false. Id. at 56.

b) Petitioner asserts that the testimony of Joseph Medina that Petitioner confessed to the crimes was false. Id. at 59.

c) Petitioner asserts that the evolution of Joseph Medina's testimony demonstrates the falsity of that testimony. Id.

**5)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process and to a fair trial when the prosecutor impeached Petitioner through unfair means[][id. at 60][by]:

a) the prosecutor's inquiries into his post-arrest silence, which denied his right to due process and to a fair trial [id.]

b) the prosecutor's characterization of fabrication based upon discovery turned over to defense [which was] . . . tantamount to questioning him as to his post-arrest silence[,] which denied his right to due process and to a fair trial [id.]

c) the prosecutor's assertion that Petitioner never recounted the version of facts to anyone prior to taking the witness stand [which]violated the attorney-client privilege because Petitioner did relay that information to his attorneys[,] . . . denied his right to due process and a fair trial [id.]; and

16

d) the prosecutor's closing argument which characterized Petitioner [as] a liar . . . [which] denied his right to due process and a fair trial. Id. at 61.

**6)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process, to a fair trial, and to equal protection when the trial court failed to exclude evidence regarding his book of fiction[][id. at 68][because]:

a) evidence regarding his book of fiction was beyond the scope of direct exam [id.];

b) evidence regarding his book should have been excluded because it was irrelevant and/or the evidence was too prejudicial when weighed under the 403 balancing test [id. at 69];

c) evidence regarding his book was improper impeachment through the use of undisclosed 404(b) evidence [id.];

d) the trial court failed to give a limiting instruction cautioning the jury that Petitioner's book of fiction was not evidence of a material or substantive fact [id.]; and

e) evidence regarding his book of fiction was used as extrinsic evidence to prove specific instances of conduct under Rules 608 and 609. Id.

**7)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process, to a fair trial, and to present a complete defense when the trial court failed to give a jury instruction on the defense theory of the case. Id. at 78.

**8)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process, to a fair trial, to assistance of counsel and to freedom from self- incrimination when the prosecutor engaged in misconduct[] [id. at 81][by]:

a) improperly inquiring into Petitioner's post-arrest silence [id.];

b) improperly undermining Petitioner's credibility and bolstering state witnesses [id.];

c) improperly using the false testimony of Joseph Medina [id.];

d) cross-examining Petitioner about his book [id.];

e) improperly misstating the contents of Petitioner's book [id.];

f) misstating and misquoting witness testimony [id.];

17

g) arguing facts not in evidence [id.];

h) making improper opening statement and closing argument [id.]; and

i) engaging in other forms of more subtle misconduct. Id. at 82.

**9)** Petitioner asserts he was deprived of his federal and state constitutional [rights] to due process, to a fair trial, to assistance of counsel, to freedom from self-incrimination, and to equal protection when the trial court engaged in misconduct[][id. at 87][by]:

a) making prejudicial  comments  during the pre-trial hearing [id. at 88];

b) coercing Joseph Medina's testimony by rejecting his plea deal [id. at 89];

c) failing to strike two jurors for cause [id.];

d) admitting Petitioner's book of fiction into evidence [id.];

e) allowing the  prosecutor to  cross-examine Petitioner regarding his post-arrest silence [id. at 90];

f) finding that Petitioner was argumentative and evasive while answering the prosecutor's questions during cross-examination [id.];

g) failing to correct the prosecutor during closing argument [id. at 91];

h) coaching the prosecutor on how to best advance her case [id.]; and

i) making other biased rulings and remarks during trial, such as (1) the defense theory of the case was an unfair surprise to the state; (2) its failure to look at Petitioner while testifying on cross exam; and (3) its "10 minutes left) comment during closing as Petitioner's counsel reached a high point in his argument. Id. at 92.

**10)** Petitioner asserts he was deprived of his federal and state constitutional right[s] to due process, to a fair trial, to equal protection, and to freedom from cruel and unusual punishment as there was insufficient evidence upon which to base his first degree murder conviction[s]. Id. at 92.

**11)** Petitioner asserts IAC at trial in violation of his federal and state constitutional right[s] to due process, to a fair trial, and to present a complete defense[][id. at 94][by]:

a) failing to investigate the underlying crime [id. at 96];

b) failing to file a motion *in limine* to exclude evidence regarding his book of fiction [id. at 97];

c) failing to request a limiting instruction on that his book be used only for impeachment purposes [id.];

d) failing to object to the prosecutor's questioning of Petitioner's post-arrest silence [id.];

e) failing to make appropriate objections during the State's closing argument [id. at 98];

f) failing to object to the myriad issues of bias and misconduct of the trial court [id.];

g) failing to make appropriate objections to raise proper grounds for Petitioner's post-trial motions [id.];

h) failing to relay [Petitioner's] version of events to the prosecutor regarding Petitioner's innocence [id. at 100]; and

i) failing to move for a mistrial[,] based upon Petitioner's consistent representations to counsel prior to trial. Id.

**12)** Petitioner asserts IAC in violation of his federal and state constitutional right[s] to due process and to effective assistance of counsel[][id.][by appellate counsel's failure to]:

a) present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented [id.]; and

b) raise present Federal Constitutional questions or cite to United States Supreme Court authority in Petitioner's direct appeal. Id. at 102.

**13)** Petitioner asserts he was deprived of his federal and state constitutional right[s] to due process and to equal protection when the . . . [WVSCA] failed to fully analyze each and every error raised by Petitioner on appeal. Id.

Further, Petitioner also refused to waive <u>Losh</u>[12] list grounds challenging:

**14)** Petitioner's mental competency at the time of the crime [id. at 104];

**15)** Petitioner's mental competency at trial [id. at 105];

**16)** the suppression of evidence by the state [id.];

---

[12] <u>Losh v. McKenzie</u>, 166 W.Va. 762, 277 S.E.2d 606 (W.Va. 1981).

19

**17)** the falsification of a transcript by the state [id.];

**18)** the court's failure to conduct a preliminary hearing [id.];

**19)** the composition of the grand jury or its procedure [id.];

**20)** any defects in the indictment [id.];

**21)** improper venue [id.];

**22)** pre-indictment delay [id.];

**23)** the court's refusal to subpoena witnesses [id. at 106];

**24)** the state's failure to turn over witness notes [id.]; and

**25)** the state's use of informants to convict. Id.[13]

By Order entered June 24, 2015, the circuit court dismissed grounds 2 and 3 because Petitioner had failed to challenge pre-trial publicity and the court's refusal to strike jurors for cause during trial and on direct appeal. ECF No. 52-19 at 11-12. The also court dismissed grounds 4, 5, 6, 7, 8, and 10, finding that they were *res judicata* by virtue of the WVSCA's having already fully adjudicated those grounds in Petitioner's direct appeal. Id. at 12 - 16, 18. The court dismissed ground 9, finding that Petitioner had failed to advance adequate factual and/or legal support for the claim. Id. at 16 - 18. Ground 13 was dismissed because there was no evidence to support the claim [id. at 18 – 19]; Grounds 14 - 25 were dismissed for failing to contain *any* factual support [id. at 19 – 20]; and the court directed Respondent to answer grounds 1, 11, and 12 of the amended petition. ECF No. 52-19 at 11 & 18. Following Respondent's answer and motion to dismiss [ECF No. 52 - 20], in an October 28, 2015 Order, the court noted that the case had been "fully briefed and an evidentiary hearing . . . would not aid the Court in rendering its opinion[]" [ECF No. 52-21 at 9], before denying relief on the remaining three claims. Id. at 14.

---

[13] Petitioner provided no argument in support of the Losh list Claims 14 – 25. See ECF No. 52-18 at 104 – 06.

On November 10, 2015, in Case No. 15-1092, Petitioner noticed his *pro se* appeal to the WVSCA of the circuit court's orders, denying his habeas petition(s).[14]  ECF No. 52-22.  In his brief on appeal, Petitioner's prayer for relief asserts that

> [a]dditionally, since the circuit court's Order denying the Petitioner relief on his habeas corpus claims relied almost exclusively on the West Virginia Supreme Court of Appeals' appellate decision concerning this matter, and being that any possible remand of this matter back to the circuit court for proper and fair adjudication of the same would be futile, **the Petitioner hereby invokes Original Jurisdiction of this Honorable Court, pursuant to the West Virginia Constitution, Article VIII, Section 3, and West Virginia Code § 51-13, and prays that this Honorable Court, pursuant to West Virginia Code § 53-4A-1 et seq.**, issues a Writ of Habeas Corpus Ad Subjiciendum in the case at bar and vacates the illegal convictions and sentences obtained against the Petitioner at his criminal trial, in violation of both the State and Federal Constitutions. **Petitioner further requests that this Court thoroughly review the entirety of his very detailed *pro se* Habeas Corpus Petition and Memorandum of Law in support thereof, originally filed in the circuit court of Berkeley County, and which *pro se* petition and Memorandum of Law are hereby fully adopted and incorporated herein**, and attached hereto, with the just and fervent desire that this Court carefully consider and, openly and on-the-record, address and rule upon the actual merits of the Federal claims found therein. Lastly, the Petitioner affirmatively asserts that all of the claims made in this petition for appeal and the fully adopted and attached *pro se* habeas corpus petition and Memorandum of Law are supported on the face of the pretrial, trial, and post conviction records in this matter, which are also attached hereto.

See ECF No. 52-23 at 8 (emphasis added). Petitioner raised eleven grounds of error:

**1)** the Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by summarily dismissing Grounds 2 through 8 and 10 of the Petitioner's habeas corpus claims for relief as being either waived or fully and finally adjudicated.  ECF No. 52-23 at 21.

**2)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when at trial, the state

---

[14] The instruction in bold font at the top of the first page of the WVSCA's form Notice of Appeal stated "[u]se this **form only for an appeal from a final judgment of a circuit court**." ECF No. 52-22 at 2. Further, it directed "ATTACH COPIES OF ALL ORDERS BEING APPEALED." Id.

impeached the Petitioner's credibility by fundamentally unfair means by attacking his post-Miranda[15] silence. Id. at 25.

3) The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10, and 14, when the state rendered the Petitioner's trial fundamentally unfair by introducing legally inadmissible and unduly prejudicial evidence to the jury in the form of a fictional novel previously authored by the Petitioner. Id. at 30.

4) The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when at trial:

   a) the state knowingly used false testimony [id. at 31];

   b) the prosecutor engaged in prosecutorial misconduct [id.];

   c) the prosecutor unlawfully attacked Petitioner's constitutional rights to silence, evidence, and counsel [id. at 33];

   d) used her position and status as a state agent to undermine Petitioner's credibility and bolster the testimony of state witnesses [id.];

   e) improperly presented, under the guise of impeachment, unduly prejudicial evidence in the form of a fictional novel previously authored by Petitioner [id.];

   f) deliberately misquoted numerous witnesses' testimony, including Petitioner's [id.];

   g) repeatedly argued supposed facts not in evidence [id.];

   h) inundated the jury with improper remarks during closing argument [id.]; and

   i) engaged in other misconduct that unduly prejudiced Petitioner.  Id.

5) The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia  Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court

---

[15] Miranda v. Arizona, 384 U.S. 436 (1966).

engaged in bias and misconduct and made prejudicial remarks before the jury [id. at 34] [including]:

> a) prior to trial, making an improper, passionate, and extremely prejudicial and biased remark in open court regarding his opinion of the Petitioner's guilt and culpability in the crimes at issue [id. at 35];

> b) prior to trial, deliberately, improperly, and prejudicially manipulating, or otherwise coercing, a State witness into artificially strengthening the State's case against the Petitioner [id.];

> c) during jury selection, improperly and prejudicially refusing to strike two potential jurors for cause, one of which ended up on the Petitioner's impaneled jury [id.]

> d) during cross-examination, permitting the prosecutor, under the guise of impeachment, to present knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out [id.];

> e) during cross-examination, permitting the prosecutor, over defense objection, to attack the Petitioner's post-Miranda silence [id.];

> f) during cross-examination, accusing the Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor [id.];

> g) not dutifully, under State law, intervening to limit and attempting to correct the prosecutor's improprieties during closing arguments [id.];

> h) attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against the Petitioner [id.]; and

> i) engaging in other more subtle, though no less prejudicial, conduct to the detriment of the Petitioner. Id.

**6)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14 when the trial court prejudicially refused to strike two challenged jurors for cause. Id. at 36.

**7)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were

clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial . . . counsel[][id. at 37] [when trial counsel failed to]:

a) thoroughly and independently investigate the crime at issue [id.];

b) file a pretrial motion to suppress the introduction of the Petitioner's violent fictional novel entitled Enter the Fire: Seven Days in the Life [id.];

c) request that a limiting instruction be given to the jury informing them that the Petitioner's fictional novel was to be limited to a specific and legitimate purpose to impeach and was not to be used as evidence of a material or substantive fact [id.];

d) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence question of: "Q. And in this instance you've had two years to make up this story? [id. at 37 – 38]"

e) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence question: "Q. And you've had two years to review all of the discovery, all of the pieces. all of the elements — before you came here to testify? [id. at 38]"

f) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence question of: "Q. But you've had two years to review absolutely every detail of this case? [id.]"

g) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "He studied the records. In every criminal case in West Virginia the State must hand to the defendant everything we know about this case. He has had two years to go through each and every record in this case, each and every phone record, each and every cell record, each and every statement. Everything we have he's had the opportunity to do it . . . . ; [id.]"

h) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "He never tells a living soul his story until he takes that stand . . . [id.];"

i) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "Remember that? He's got two years to craft his story . . . [id.];"

j) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "He waits to be on the stand to craft his story. All of his pieces fit. They fit because you can look at every piece of evidence and go oh., this must be what happened. This must be what happened. This may be what happened . . . [id.];"

k) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "He's crafted his story. He sat there slick and polished after two years and wrote his story because if he fails in this story he goes to prison for the rest of his life so connect all the little dots . . . [id.];"

l) object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "It's a story. He wrote a tale and he sat upon the witness stand and he told you that tale after he looked at every sheet of paper that he went over it mile after mile, and he weaved and crafted it into a fine story . . . [id.];"

m) object to, and to move for a mistrial for, the prosecutor's other improper and unconstitutional remarks made during closing arguments [id.];

n) object to, and move for a mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony [id.];

o) object to, and to move for a mistrial for, the trial court's many instances of blatant bias and misconduct [id.];

p) object to a myriad of prejudicial circumstances throughout the entirety of the trial [id.]; and failed to

q) object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1-9 of Petitioner's *pro se* habeas petition. Id. at 38 – 39.

**7)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel[][id. at 37][when appellate counsel failed to]:

r) present certain grounds in the Petitioner's direct appeal that were obviously stronger than those presented [id. at 39];

s) present Federal Constitutional questions or cite United States Supreme Court authority in the Petitioner's direct appeal to the WVSCA [id.];

t) pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor listed and described in points 4 - 12 above, which pinpoint citations were critical in order for the appellate court to make a thorough, fair, and accurate adjudication of the issue being adjudicated [id.];

u) advance in his appellate brief Petitioner's federal constitutional claim that the trial court prejudicially refused to strike two challenged jurors for cause [id.]; and

v) to include and incorporate each and every individual and collective assertion and argument of error made in Grounds 1 - 9 of Petitioner's *pro se* habeas petition. Id. at 39 – 40.

**8)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus, as Petitioner's state and federal constitutional rights were clearly violated, under the United States Constitution's Fifth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10, and Article VIII, § 4, when the . . . [WVSCA] violated its state constitution so as to deny the Petitioner a state-created liberty interest when it failed to provide the Petitioner meaningful appellate review. Id. at 41.

**9)** The Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by not allowing the Petitioner to proceed *pro se* on his petition for a writ of habeas corpus, and for not considering the Petitioner's *pro se* petition when making its decision. Id. at 42.

**10)** The Circuit Court of Berkeley County abused its discretion and disregarded the law by failing to adjudicate the Petitioner's cumulative error claim [id. at 44 – 45]; and

**11)** The Circuit Court of Berkeley County arrived at a clearly erroneous finding when it found as fact that the Petitioner had admitted that he told no one about the crime at issue until he testified at trial. Id. at 45.

By Memorandum Decision entered on June 21, 2016, the WVSCA affirmed the circuit court's orders on Petitioner's habeas claims under Rule 21 of the Rules of Appellate Procedure.

ECF No. 52-24. On July 22, 2016, the WVSCA entered its mandate, finalizing its decision. Id. at

7.  On July 5, 2016, Prophet filed a petition for writ of *certiorari* with the United States Supreme

Court; it was denied on October 3, 2016.[16]

## D.  **Petitioner's Federal Habeas Petition**

On August 24, 2016, Petitioner first filed his *pro se* § 2254 petition; it was stricken for its

failure to comply with the LR PL P.  On September 2, 2016, Petitioner refiled the instant § 2254

petition on a court-approved form.  In it, he raises the following claims:

**1)** Petitioner's  federal  constitutional  rights to  due process of law and to a fair trial by
an  impartial  jury  were  violated  under  the  United  States  Constitution's  Fifth,  Sixth,  and
Fourteenth Amendments, by the prejudicial pre-trial and mid-trial publicity that infected his trial.
ECF No. 13 at 6.

**2)** Petitioner's federal constitutional rights to due process of law, to equal protection of
the  law,  and  to  a  fair  trial  by  an  impartial  jury  were  violated  under  the  United  States
Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court improperly and
prejudicially refused to strike two challenged jurors for cause. Id. at 8.

**3)** Petitioner's federal constitutional rights to due process of law, to equal protection of
the law, and to a fair trial were violated under the United States Constitution's Fifth, Sixth, and
Fourteenth Amendments, by the prosecutor's knowing use of false testimony used to obtain the
Petitioner's convictions. Id. at 9.

**4)**  Petitioner's federal constitutional rights to due process of law, to a fair trial by an
impartial jury, to not be compelled to be a witness against himself, to equal protection of the law,
to present a defense, to the effective assistance of counsel, and to the access of evidence under
the  United  States  Constitution's  Fifth,  Sixth,  and  Fourteenth  Amendments,  when  the  state
impeached the Petitioner's credibility by fundamentally unfair means and by attacking his post-
Miranda silence. Id. at 11.

**5)** Petitioner's federal constitutional rights to due process of law, to a fair trial, and to
equal protection of the law were violated under the United States Constitution's Fifth, Sixth, and
Fourteenth Amendments when the state rendered Petitioner's trial fundamentally unfair by
introducing at trial legally inadmissible and unduly prejudicial evidence to the jury in the form of
a fictional novel previously authored by Petitioner. ECF No. 13-1 at 1.

**6)** Petitioner's federal constitutional rights-to due process of law, to a fair trial, to present
a complete defense, and to equal protection of the law were violated, under the United States

---

[16] See the docket in Prophet's United States Supreme Court petition for writ of *certiorari* of the WVSCA's decision
affirming the Berkeley County Circuit Court in his habeas petition, in Case No. 16-5130, *available at*:
< https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-5130.htm >

Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court refused to give the jury an instruction on the defense's theory of the case. Id.

**7)** Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor for the state engaged in prosecutorial misconduct and made numerous improper remarks before the jury[][id.][including]:

> a) unlawfully attacking the Petitioner's Constitutional rights to silence, to counsel, and to evidence [id.];

> b) using her position and status as an agent of the State to undermine Petitioner 's credibility and testimony, and to bolster the testimony of State witnesses [id. at 1 – 2];

> c) knowingly eliciting and utilizing false testimony to secure the Petitioner's conviction [id. at 2];

> d) presenting under the guise of impeachment knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence in the form of a fictional novel authored by the Petitioner [id.];

> e) knowingly and deliberately misstating, misrepresenting, and distorting scenes and narratives from the Petitioner's novel for the obvious purpose of unduly prejudicing the Petitioner [id.];

> f) deliberately misquoting numerous witness' testimony, including the Petitioner's, in order to unduly prejudice the Petitioner [id.];

> g) repeatedly arguing supposed facts not in evidence [id.];

> h) inundating the jury with improper remarks during closing arguments [id.]; and

> i) engaging in other misconduct that unduly prejudiced the Petitioner. Id.

**8)** Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury[][id. at 2][by]:

a) prior to trial, making an improper, passionate, and extremely prejudicial and biased remark in open court regarding his opinion of the Petitioner's guilt and culpability in the crimes at issue [id.];

b) prior to trial, deliberately, improperly, and prejudicially manipulating, or otherwise coercing, a State witness (Joseph Medina) into artificially strengthening the State's case against the Petitioner [id.];

c) during jury selection, improperly and prejudicially refusing to strike two biased jurors for cause, one of which ended up on the Petitioner 's impaneled jury [id.];

d) during cross-examination, permitting the prosecutor, under the guise of impeachment, to present knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out [id.];

e) during cross-examination, permitting the prosecutor, over defense objection, to attack the Petitioner 's post-Miranda silence [id.];

f) during cross-examination, accusing the Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor [id.];

g) attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against the Petitioner [id.]; and

h) engaging in other more subtle, though no less prejudicial, conduct to the detriment of the Petitioner. Id.

**9)** Petitioner's federal constitutional rights to due process of law, to equal protection of the laws, to not have cruel and unusual punishment inflicted on him, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when he was convicted by evidence insufficient to establish his guilt beyond a reasonable doubt for every element of the charged crime. Id. at 2 – 3.

**10)** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel[][id. at 3][when trial counsel]:

a) failed to thoroughly and independently investigate the crime at issue [id. at 3];

b) failed to file a pretrial motion to suppress the introduction of the Petitioner's violent fictional novel entitled Enter the Fire: Seven Days in the Life [id.];

29

c) failed to request that a limiting instruction be given to the jury informing them that the Petitioner's fictional novel was to be limited to a specific and legitimate purpose to impeach and was not to be used as evidence of a material or substantive fact [id.]; and

d) failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence question of: "<u>Q. And in this instance you've had two years to make up this story?</u>" <u>Id.</u>

e) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence question: "<u>Q. And you've had two years to review all of the discovery, all of the pieces, all of the elements — before you came here to testify?</u>" <u>Id.</u>

f) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence question of: "<u>Q. But you've had two years to review absolutely every detail of this case?</u>" <u>Id.</u> at 3 – 4.

g) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence remark of: "<u>He studied the records. In every criminal case in West Virginia the State must hand to the defendant everything we know about this case. He has had two years to go through each and every record in this case, each and every phone record, each and every cell record, each and every statement. Everything we have he's had the opportunity to do it . . .</u>" <u>Id.</u> at 4.

h) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence remark of: "<u>He never tells a living soul his story until he takes that stand</u> . . ." <u>Id.</u>

i) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence remark of: "<u>Remember that? He's got two years to craft his story</u>  . . ." <u>Id.</u>

j) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence remark of: "<u>He waits to be on the stand to craft his story. All of his pieces fit. They fit because you can look at every piece of evidence and go oh, this must be what happened. This must be what happened. This may be what happened</u> . . ." <u>Id.</u>

k) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-<u>Miranda</u> silence remark of: "<u>He's crafted his story. He sat there slick and polished after two years and wrote his story because if he fails in this story he goes to prison for the rest of his life so connect all the little dots</u> . . ." <u>Id.</u>

l) Trial counsel failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark of: "It's a story. He wrote a tale and he sat upon the witness stand and he told you that tale after he looked at every sheet of paper that he went over it mile after mile, and he weaved and crafted it into a fine story . . ." Id.

m) Trial counsel failed to object to, and to move for a mistrial for, the prosecutor's other improper and unconstitutional remarks made during closing arguments [id.];

n) failed to object to, and move for a mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony [id.];

o) failed to object to, and to move for a mistrial for, the trial court's many instances of blatant bias and misconduct [id.];

p) failed to object to a myriad of prejudicial circumstances throughout the entirety of the trial [id.]; and

q) failed to object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 - 9 of Petitioner's *pro se* habeas petition [id. at 5], which claims are:

10(q)(1) (formerly Ground 1 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution' s Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the prejudicial pre-trial and trial  publicity  that infected  his trial. See ECF No. 52-16 at 48.

10(q)(2) (formerly Ground 2 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court prejudicially  refused to strike two challenged jurors for cause.  Id. at 50.

10(q)(3) (formerly Ground 3 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the prosecutor's knowing use of false testimony used to obtain the Petitioner's conviction [id. at 59], specifically:

a) Joseph Medina's claim of not having spoken to the police initially, and without the presence of an attorney [id. at 60]; and

b) Joseph Medina's claim that Petitioner had confessed to the crime in question. Id. at 65.

10(q)(4) (formerly Ground 4 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, to not be compelled to be a witness against himself, to equal protection of the laws, to present a defense, to the assistance of counsel, and to the access of evidence - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article Ill, §§ 3, 5, 10 and 14, when the state impeached the Petitioner's credibility by fundamentally unfair means[][id. at 68][by]:

> a) repeatedly questioned and made argument regarding Petitioner's post-Miranda silence [id. at 70];

> b) repeatedly asserted that Petitioner's due process-mandated entitlement to discovery evidence aided the Petitioner in deceiving the jury [id. at 75];

> c) implicitly and illicitly utilized the privileges of the attorney-client relationship to Petitioner's detriment [id. at 77]; and

> d) repeatedly accused Petitioner of having contemporaneously committed an uncharged and unindicted felony crime during the trial. Id. at 78.

10(q)(5)(formerly Ground 5 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, and to the equal protection of the laws - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when the state rendered the Petitioner's trial fundamentally unfair by introducing at trial legally inadmissible and unduly prejudicial evidence in the form of a fictional novel previously authored by the Petitioner. Id. at 79.

10(q)(6) (formerly Ground 6 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial Jury, and to present a complete defense-were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court refused to give the jury an instruction on the defense theory of the case.  Id. at 91.

10(q)(7) (formerly Ground 7 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 5, 10 and 14, when the prosecutor engaged in prosecutorial misconduct and made numerous improper  remarks before the jury[] [id. at 94] [specifically, by]:

> a) attacking the Petitioner's constitutionally protected rights [id. at 95];

b) using her position as an agent of the state to undermine the credibility of Petitioner and to bolster the state's witnesses [id.];

c) knowingly utilizing the false testimony of Joseph Medina [id.];

d) introducing, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence into the trial . . . [in the form of Petitioner's previously-written novel] [id.];

e) knowingly and deliberately misstated, misrepresented, and distorted scenes and narratives from the Petitioner's novel for the obvious purpose of prejudicing Petitioner [id.];

f) deliberately misstating and misquoting witness testimony [id.];

g) repeatedly argued supposed facts not in evidence [id.];

h) inundated the trial with improper remarks during closing argument [id.];  and

i) engaged in other misconduct that unduly prejudiced Petitioner. Id.

10(q)(8) (formerly Ground 8 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the laws, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, Sections 3, 5, 10 and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury[][id. at 115][when]:

a) prior to trial, making an improper, passionate, and extremely prejudicial and biased remark in open court, regarding the court's opinion of Petitioner's guilt and culpability regarding the crime at issue [id. at 116];

b) prior to trial, [the court] deliberately, improperly, and prejudicially manipulated or otherwise coerced a state witness into artificially strengthening the state's case against Petitioner [id.];

c) during jury selection, [the court] improperly and prejudicially refused to strike two potential jurors for cause, one of whom ended up on Petitioner's jury [id. at 116 -17];

d) during Petitioner's cross-examination, [the court] permitted the prosecutor to present, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out [id. at 117];

e) during Petitioner's cross-examination, [the court] permitted the prosecutor, over defense objection to unlawfully attack Petitioner's post-<u>Miranda</u> silence [<u>id.</u>];

f) during Petitioner's cross-examination, accusing Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor [<u>id.</u>];

g) by failing to dutifully intervene to limit and attempt the prosecutor's improprieties during closing argument [<u>id.</u>];

h) by attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against Petitioner [<u>id.</u>]; and

i) by engaging in other more subtle, though no less prejudicial conduct to the detriment of Petitioner. <u>Id.</u>

10(q)(9) (formerly <u>Ground 9</u> in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to equal protection of the laws, to not have cruel and unusual punishment inflicted on him, and to a fair trial - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and Under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when he was convicted by evidence insufficient to establish his guilt beyond a reasonable doubt for every element of the charged crimes. <u>Id.</u> at 136.

10)(r) Trial . . counsel rendered ineffective assistance by failing to effectively argue that Petitioner suffered prejudicial pretrial publicity [*implicitly-raised claim*, <u>see</u> ECF No. 13 at 6].

10(s) Trial counsel rendered ineffective assistance by failing to successfully argue that two jurors should be struck for cause [*implicitly-raised claim,* <u>see id.</u> at 8].

**11)** Petitioner's federal constitutional rights to due process of law, and to a fair trial by an impartial jury, were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the cumulative effect of multiple trial errors[] [ECF No. 13-1 at 5] [including]:

a) EACH AND EVERY INDIVIDUAL AND COLLECTIVE ASSERTION AND ARGUMENT OF ERROR MADE IN GROUNDS 1 - 10 OF THIS PETITION ABOVE [<u>id.</u>, emphasis in original];

b) the prosecutor for the State failing to provide pre-trial notice of its intent to use 404(b) evidence against the Petitioner [<u>id.</u>];

c) the trial court failing to change the venue of the trial due to massive pre-trial publicity adverse to the Petitioner [<u>id.</u>]; and

d) State witness Lt. Harmison deliberately and unnecessarily informing the jury during his testimony that the Petitioner was being held in the local regional jail. <u>Id.</u>

**12)** Petitioner's federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed appellate counsel[] [id.][who failed to]:

a) present certain grounds on appeal that were obviously stronger than those presented [id.];

b) present federal constitutional questions or cite to United States Supreme Court authority [id.];

c) pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor listed and described in Ground 4, above, which pinpoint citations were critical in order for the appellate court to make a thorough, fair, and accurate adjudication of the Petitioner's direct appeal [id.];

d) advance in Petitioner's direct appeal brief the federal constitutional claim that the trial court prejudicially refused to strike two challenged jurors for cause [id. at 5 - 6];[17] and

e) failed to include and incorporate in Petitioner's appeal each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition [] [id. at 6], [which claims are]:

12(e)(1) (formerly Ground 1 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution' s Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the prejudicial pre-trial and trial publicity that infected his trial. See ECF No. 52-16 at 48.

12(e)(2) (formerly Ground 2 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court prejudicially refused to strike two challenged jurors for cause. Id. at 50.

12(e)(3) (formerly Ground 3 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's

---

[17] This claim is also an implicitly-raised claim; as reason for not raising his Ground 2 (trial court improperly refused to strike two jurors for cause) claim on appeal, Petitioner alleged that trial and/or appellate counsel were ineffective. See ECF No. 13 at 8.

Article III, §§ 10 and 14, by the prosecutor's knowing use of false testimony used to obtain the Petitioner's conviction[][id. at 59][specifically]:

> a) Joseph Medina's claim of not having spoken to the police initially, and without the presence of an attorney [id. at 60]; and

> b) Joseph Medina's claim that Petitioner had confessed to the crime in question. Id. at 65.

12(e)(4) (formerly Ground 4 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, to not be compelled to be a witness against himself, to equal protection of the laws, to present a defense, to the assistance of counsel, and to the access of evidence - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article Ill, §§ 3, 5, 10 and 14, when the state impeached the Petitioner's credibility by fundamentally unfair means[][id. at 68][when the prosecutor]:

> a) repeatedly questioned and made argument regarding Petitioner's post-Miranda silence [id. at 70];

> b) repeatedly asserted that Petitioner's due process-mandated entitlement to discovery evidence aided the Petitioner in deceiving the jury [id. at 75];

> c) implicitly and illicitly utilized the privileges of the attorney-client relationship to Petitioner's detriment [id. at 77]; and

> d) repeatedly accused Petitioner of having contemporaneously committed an uncharged and unindicted felony crime during the trial. Id. at 78.

12(e)(5) (formerly Ground 5 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial jury, and to the equal protection of the laws - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when the state rendered the Petitioner's trial fundamentally unfair by introducing at trial legally inadmissible and unduly prejudicial evidence in the form of a fictional novel previously authored by the Petitioner. Id. at 79.

12(e)(6) (formerly Ground 6 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to a fair trial by an impartial Jury, and to present a complete defense-were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, when the trial court refused to give the jury an instruction on the defense theory of the case. Id. at 91.

12(e)(7) (formerly Ground 7 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 5, 10 and 14, when the prosecutor

engaged in prosecutorial misconduct and made numerous improper remarks before the jury[][id. at 94][specifically, by]:

a) attacking the Petitioner's constitutionally protected rights [id. at 95];

b) using her position as an agent of the state to undermine the credibility of Petitioner and to bolster the state's witnesses [id.];

c) knowingly utilizing the false testimony of Joseph Medina [id.];

d) introducing, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence into the trial [in the form of Petitioner's previously-written novel][id.];

e) knowingly and deliberately misstated, misrepresented, and distorted scenes and narratives from the Petitioner's novel for the obvious purpose of prejudicing Petitioner [id.];

f) deliberately misstating and misquoting witness testimony [id.];

g) repeatedly argued supposed facts not in evidence [id.];

h) inundated the trial with improper remarks [id.];  and

i) engaged in other misconduct that unduly prejudiced the Petitioner. Id.

12(e)(8) (formerly Ground 8 in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the laws, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, Sections 3, 5, 10 and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury[][id. at 115][when]:

a) prior to trial, [it] made an improper, passionate, and extremely prejudicial and biased remark in open court, regarding his opinion of Petitioner's guilt and culpability regarding the crime at issue [id. at 116];

b) prior to trial, [it] deliberately, improperly, and prejudicially manipulated or otherwise coerced a state witness into artificially strengthening the state's case against Petitioner [id.];

c) during jury selection, [it] improperly and prejudicially refused to strike two potential jurors for cause, one of whom ended up on Petitioner's jury [id. at 116 – 17];

d) during Petitioner's cross-examination, [it] permitted the prosecutor to present, under the guise of impeachment, knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out [id. at 117];

37

e) during Petitioner's cross-examination, [it] permitted the prosecutor, over defense objection to unlawfully attack Petitioner's post-<u>Miranda</u> silence [<u>id.</u>];

f) during Petitioner's cross-examination, [it]accused Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor [<u>id.</u>];

g) by failing to dutifully intervene to limit and attempt the prosecutor's improprieties during closing argument [<u>id.</u>];

h) by attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against Petitioner [<u>id.</u>]; and

i) by engaging in other more subtle, though no less prejudicial conduct to the detriment of Petitioner. <u>Id.</u>

12(e)(9) (formerly <u>Ground 9</u> in the *pro se* state petition): The Petitioner's state and federal constitutional rights - to due process of law, to equal protection of the laws, to not have cruel and unusual punishment inflicted on him, and to a fair trial - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and Under the West Virginia Constitution's Article III, §§ 3, 10 and 14, when he was convicted by evidence insufficient to establish his guilt beyond a reasonable doubt for every element of the charged crimes [<u>id.</u> at 136]; and

Ground 12(f) Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to transfer Petitioner's criminal trial due to prejudicial pretrial publicity [*implicitly raised claim*; see ECF No. 13 at 6].

**13)** Petitioner's federal constitutional rights to due process of law, and to the equal protection of the law were violated, under the United States Constitution's Fifth and Fourteenth Amendments, when the WVSCA violated its state constitution so as to deny the Petitioner a state-created liberty interest, and when it failed to provide the Petitioner meaningful appellate and post-conviction collateral review.  ECF No. 13-1 at 6.

Regarding exhaustion, Prophet asserts that "[a]ll the grounds presented in this petition have been presented to West Virginia's highest court [<u>id.</u> at 15];" that he fully exhausted his state court remedies as to Grounds 5 – 13; Grounds 5, 6, 7, 8, and 9 were raised on direct appeal; Ground 10 was not raised on direct appeal because IAC claims are more properly raised in post-conviction collateral review; Ground 11 was not raised on direct appeal due to appellate counsel's ineffectiveness; and that Grounds 12 and 13 "were not raised on direct appeal for

obvious reasons." Id. at 6 - 7. He contends that he appealed all of the claims denied in his state habeas motion to the WVSCA. Id. at 7.

Petitioner contends that his petition is timely filed. Id. at 17.

As relief, Petitioner requests that his convictions be reversed and/or overturned, and that he be immediately discharged from state custody. Id. at 18.

## E.  Respondent's Motion to Dismiss for Failure to Exhaust

Respondent argues that the petition must be dismissed for failure to exhaust state court remedies because it is a mixed petition,[18] containing seven grounds for relief that have not been previously adjudicated on direct appeal or in state post-conviction proceedings, requiring the entire petition to be dismissed.  ECF No. 53 at 1.

Specifically, some of the sub-grounds of IAC of trial counsel that Petitioner raised on appeal of his habeas petition to the WVSCA, while also raised in a similar format in the instant federal petition, although similar to the sub-grounds of trial counsel's ineffectiveness he raised in the circuit court, are not the *same* claims that he raised there, because in his amended state habeas petition, the sub-grounds of trial counsel's ineffectiveness were all specifically-pled as independent claims, while on appeal of that petition to the WVSCA, Petitioner raised additional sub-grounds of trial counsel's ineffectiveness through "catch-all" claims, i.e., alleging that trial counsel[19] [sic] was also ineffective for not having raise the claims in Grounds 1 – 9 of the federal petition[20] [sic], thus, they were improperly before the WVSCA on appeal of the state habeas petition. ECF No. 55, n.1 at 23; see also ECF No. 52, n.1 at 2.

---

[18] A "mixed petition" is one that contains both exhausted and unexhausted claims.

[19] In the petition, Prophet cited the "ineffective assistance of Petitioner's trial **and/or appellate counsel**" as the reason he did not raise his § 2254 Ground One claim on direct appeal. See ECF No. 13 at 6 (emphasis added). It is unclear whether Prophet is merely referencing attorney Prezioso here, because Prezioso served both as one of Petitioner's trial counsel and also as appellate counsel, or whether Petitioner means that trial counsel was ineffective for not preserving the claims as grounds for appeal and appellate counsel was ineffective for not raising them on appeal.

[20] Prophet's federal Ground 10(q) (IAC trial counsel claim) alleges that trial counsel were ineffective for failing "to object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's ***pro se* habeas [state] petition**," [see ECF No. 13-1 at 5 (emphasis added)], not his *federal* petition.

However, Grounds 1 – 9 of the *pro se* state habeas petition mirror the claims in the federal petition. Thereafter, Ground 10 in the federal petition has more sub-grounds of trial counsel ineffectiveness than the *pro se* state petition; Ground 11 is the same in both; Ground 12 in the federal petition has more sub-grounds of appellate counsel's ineffectiveness than the *pro se* state petition; and Ground 13 in the federal petition contends that the WVSCA denied him meaningful appellate *and post-conviction collateral* review, while the *pro se* state habeas petition only asserts that the WVSCA denied him meaningful *appellate* review. See ECF No. 56-16 and ECF No. 13 generally.

Likewise, some of the sub-grounds of IAC of appellate counsel that Petitioner raised on appeal of his habeas petition to the WVSCA, while also raised in a similar format in the instant federal petition, although similar to the sub-grounds of appellate counsel's ineffectiveness raised in the circuit court, are not the *same* claims that he raised there, because in his amended state habeas petition, the sub-grounds of appellate counsel's ineffectiveness were all specifically-pled as independent claims, while on appeal of that petition to the WVSCA, Petitioner raised additional sub-grounds of IAC of appellate counsel through "catch-all" claims, i.e., alleging that appellate counsel[21]   was also ineffective for not having raise the claims in Grounds 1 – 9 of the federal petition [sic], thus, they were improperly before the WVSCA on appeal of the state habeas petition. ECF No. 55, n.1 at 23; see also ECF No. 52, n.1 at 2.

Specifically, the grounds that Petitioner raises in his § 2254 petition that were not considered in his state post-conviction proceedings are:

Ground 10(14) *[herein renumbered as Ground 10(n)]:* Trial counsel failed to object to, and move for a mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony. See ECF No. 13-1 at 4.

Ground 10(17) *[herein renumbered as Ground 10(r)]:* Trial counsel rendered ineffective assistance by failing to effectively argue that Petitioner suffered prejudicial pretrial publicity[22] [*implicitly-raised claim*, see ECF No. 13 at 6].

Ground 10(17) *[herein renumbered as Ground 10(s)]:* Trial counsel rendered ineffective assistance by failing to successfully argue that two jurors should be struck for cause[23] [*implicitly-raised claim,* see ECF No. 13 at 8];

Ground 10(17) [sic] *[herein renumbered as Ground 10(q)(6)]* Trial counsel rendered ineffective assistance by failing to successfully argue that the trial court instruct the jury regarding Petitioner's theory of defense. See ECF No. 13-1 at 1.

---

[21] Likewise, Prophet's Ground 12(e) (IAC appellate counsel claim) alleges that appellate counsel was ineffective for failing to "include and incorporate in the Petitioner's direct appeal each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* [state] habeas petition," [see ECF No. 13-1 at 6], not his *federal* petition.

[22] Here, Respondent references an implicitly-raised ground of trial and/or appellate counsel's ineffectiveness that Petitioner cites as the reason for not raising federal Ground 1 claim (prejudicial pretrial publicity) on direct appeal, i.e., counsel failed to include it.   See ECF No. 13 at 6.

[23] Here, Respondent references another implicitly-raised ground of trial and/or counsel's ineffectiveness Petitioner alleges was his reason for not raising federal Ground 2 claim (trial court's refusal to strike two challenged jurors for cause) on direct appeal, i.e., counsel was ineffective for not including it.   See ECF No. 13 at 8.

Ground 12(3) *[herein renumbered as Ground 12(c)]* Appellate counsel failed to pinpoint with accurate, appropriate, and specific citations to the trial record the post-<u>Miranda</u> silence remarks of the prosecutor. ECF No. 13-1 at 5.

Ground 12(4) *[herein renumbered as Ground 12(d)]* Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to strike two jurors for cause on appeal[24] [<u>see</u> ECF No. 13-1 at 6; <u>see also</u> ECF No. 13 at 8]; and

Ground 12(5) *[herein renumbered as Ground 12(e)]* Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to transfer Petitioner's criminal trial due to prejudicial pretrial publicity. <u>See</u> ECF No. 13 at 6; <u>see also</u> Ground 12(e) at ECF No. 13-1 at 6.[25]

ECF No. 55 at 22 – 23. Respondent acknowledges that while Petitioner did raise these grounds on his habeas appeal, the grounds were not properly before the WVSCA because the WVSCA does not consider grounds raised for the first time on appeal. ECF No. 55 at 23. Respondent notes that

. . . Because those grounds were not considered by the circuit court below, the WVSCA's Memorandum Decision affirming the circuit court's denial of relief made no factual findings or legal determinations as to those claims. <u>See</u> W.Va. R.A.P. 21(c) (directing that memorandum decisions are only appropriate when (1) there is no substantial question of law and (2) the WVSCA does not disagree with the lower court's findings). Rule 21(c) further separates a memorandum decision from an opinion of the court**, *which would be necessary to consider the merits of the claims Petitioner raised for the first time within the WVSCA's original jurisdiction*<u>.</u>** <u>See</u> <u>generally</u> W.Va. R.A.P. 16(a). Simply put, the WVSCA's blanket affirmance of the circuit court's order denying relief does not contemplate those grounds."

ECF No. 55 at 23 – 24 (emphasis added).

---

[24] This ground is both an implicitly-raised claim [<u>see</u> ECF No. 31 at 8] as well as an explicitly-stated, stand-alone ground specifically alleged in Petitioner's federal petition as Ground 12(d). <u>See</u> ECF No. 13-1 at 5-6.

[25] Respondent notes that this claim is both implicitly stated (at ECF No. 13 at 6), and also indirectly stated, arising out of Petitioner's Ground 12(d) claim that appellate counsel was ineffective for failing to raise the claims contained within Grounds 1 through 9 of the federal [sic] petition. <u>See</u> <u>generally</u> ECF No. 13, ECF No. 13-1 at 6.   Prophet's claim was that appellate counsel "failed to include and incorporate in the Petitioner's direct appeal each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* [state] habeas petition[,]" not Grounds 1 – 9 of his *federal* petition. As noted *supra*, because the Ground 1 – 9 claims in the *pro se* state petition mirror those in the federal petition, this is a distinction without a difference.

Because these claims were not properly before the WVSCA, due to Petitioner's procedural error in failing to raise them in the circuit court, they have not been adjudicated on their merits or fairly presented to the state courts, as required.  Id. at 25.

Therefore, because there is no way to determine whether the WVSCA's adjudication of those claims resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding, these claims are not properly exhausted and this § 2254 petition is improperly before this court and should be dismissed.  Id. at 25 – 26.

Respondent further asserts that Prophet's petition is precluded from federal review until such time as Prophet either returns to state court to finish exhausting his unexhausted claims, or chooses to abandon them.  Respondent reserves the right to specifically address the claims on their merits when Prophet's petition is properly before this court for review. ECF No. 52 at 1.

9) Further, Respondent notes that Petitioner's federal Grounds 1 and 2, which allege prejudicial pre-trial trial publicity and the circuit court's failure to strike two jurors for cause, are procedurally barred because Petitioner failed to raise them on direct review.  Because of the state courts' refusal to review Ground 2 [sic], the claim is barred from federal review. Id. at 5.

10) Respondent concedes that the petition was timely filed, and acknowledges that due to the length of time this matter has been pending, dismissal of the petition would render it time-barred under 28 U.S.C. § 2244(d)'s one-year filing period; Respondent notes that it would not object to a stay of these proceedings to permit Petitioner to exhaust the same. Id. at 3 – 4.

## F. Petitioner's Responses in Opposition

In his responses[26] in opposition, Prophet first argues that each of his federal constitutional claims have been "'fairly presented' to the 'states['] highest court' at least once." ECF No. 61 at 2.  In support, he contends that he

> presented the entirety of his federal habeas corpus claims to the WVSCA and invoked [the] Original Jurisdiction of that court to grant him a writ of habeas corpus, in which the WVSCA accepted his petition, reviewed it for prejudicial error, and ruled against his claims after making a decision on the merits.  Thus, exhaustion has been especially achieved.

Id. at 2.  He asserts that he agrees with Respondent's characterization of his direct appeal and state habeas proceedings, but disagrees with Respondent that some of his IAC subgrounds of

---

[26] Prophet filed a response in opposition to the Respondent's dispositive motion and a reply to the Respondent's answer.  See ECF Nos. 61 & 62.

were improperly before the WVSCA, asserting that they were all properly before the WVSCA.

Further, Petitioner asserts that

> Though the Petitioner fully disputes the Respondent's position that some of his federal claims are unexhausted, the Petitioner chooses to argue against the Respondent's position only in regard to the "standalone" grounds which the Petitioner specifically asserted in his federal habeas corpus petition, and not the ones that arise out of the Respondent's reasonable interpretation of Petitioner's Ground 10(17) *[herein Ground 10(q) with its subparts 10(q)(1 - 9) and all of their sub-claims]* and 12(15) claims *[herein Ground 12(e) with its subparts 12(e)(1 – 9) and all of their sub-claims]*, in which the Petitioner claims ineffective assistance of trial and appellate counsel for counsel failing to raise the claims contained within Grounds 1-9 of his State habeas corpus petition. The Petitioner believes that these grounds, as interpreted by the Respondent, lack merit, so he willingly abandons them.

Id. at n.1.

Nonetheless, while noting that he "fully disputes the Respondent's position that some of his federal claims are unexhausted," Petitioner then states that he "chooses to, and hereby does, summarily **ABANDON** Grounds 10(17) and 12(15) [sic][27] of his 2254 petition and asks that this Court proceed in this matter only on the remaining allegedly unexhausted claims, Grounds 10(14), 12(3), and 12(4). Id., n.1. (emphasis in original), and requests that the Court deny Respondent's dispositive motion. Id.

To clarify, Petitioner reiterates the seven claims contested by the Respondent:

> **Ground 10(14)** *[herein Ground 10(n):*  Trial counsel failed to object to, and move  for a mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony (ECF No. 13-1 at 4);

> **Ground 10(17)** *[herein Ground 10(r)]:* Trial counsel rendered ineffective assistance by failing to effectively argue that Petitioner suffered prejudicial pretrial publicity (ECF No. 13 at 6) **(ABANDONED);**[28]

---

[27] Presumably Petitioner meant Ground 12(5) because there is no Ground 12(15) in his petition.

[28] Petitioner's footnote to this claim states "[a]s a preliminary matter, the Petitioner hereby summarily **ABANDONS** the grounds so indicated above.  The Petitioner's argument in support of his position will thus only apply to Grounds 10(14), 12(3), and 12(4). See ECF No. 61 at 6, n.2 (emphasis in the original).

     **Ground 10(17)** *[herein Ground 10(s)]:* Trial counsel rendered ineffective assistance by failing to successfully argue that two jurors should be struck for cause *(*see ECF No. 13 at 8) **(ABANDONED);**

     **Ground 10(17)** *[herein Ground 10(q)(6)]:* Trial counsel rendered ineffective assistance by failing to successfully argue that the trial court instruct the jury regarding Petitioner's theory of defense *(*see ECF No. 13-1 at 1), **(ABANDONED);**

     **Ground 12(3)** *[herein Ground 12(c)]:* Appellate counsel failed to pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor (ECF No. 13-1 at 5);

     **Ground 12(4)** *[herein Ground 12(d)]:* Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to strike two jurors for cause on appeal (ECF No. 13-1 at 6); [and]

     **Ground 12(5)** *[herein Ground 12(e)]:* Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to transfer Petitioner's criminal trial due to prejudicial pretrial publicity (ECF Nos. 13 at 6, 13-1 at 6), **(ABANDONED).**

ECF No. 61 at 6.

     Petitioner reiterates his argument that he is entitled to review on his remaining claims and notes that

     while the WVSCA never expressly announced in its Memorandum Decision that it was reviewing . . . Petitioner's habeas corpus petition under its Original Jurisdiction authority, neither did the court reject or denounce . . . Petitioner's invocation . . . [of the same] nor did the court remand . . . Petitioner back to the circuit court to address his newly raised claims, as authority permitted if the court were actually refusing to hear the original jurisdiction petition.

Id. at 9 – 10.

     In response to Respondent's argument that Grounds 1 and 2 are procedurally barred; Petitioner acknowledges that while W.Va. Code § 43-4A-1 *et seq.* states that any claim that could have been raised at trial or on direct appeal is presumed waived, that presumption is rebuttable, and contends that the failure to raise both claims on appeal was caused by counsel's ineffectiveness.  ECF No. 62 at 3.  As proof of prejudice, he argues that "if appellate counsel had

advanced these contentions on direct appeal . . . Petitioner's direct appeal would have been successful." <u>Id.</u> at 5.

Finally, he notes that Respondent has never addressed the allegations in the petition, and only filed a motion to dismiss it for failure to exhaust, "a willful and direct violation of the Curt's May 2, 2017, Order[.]" <u>Id.</u> at 8.   He requests that the court deny Respondent's motion and expedite review of his petition. <u>Id.</u>

## II.  <u>Standard of Review</u>

### A.  <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' "<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.  In <u>Twombly</u>, the United States Supreme Court

noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable."  Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint.  "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a

46

court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

## III. <u>Analysis</u>

## A. <u>Exhaustion of State Court Remedies and Procedural Default</u>

Section 2254 of Title 28 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State...

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1)(A), (c). Therefore, a petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. <u>See</u> 28 U.S.C. §2254(b). Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349, *reh'g denied,* 490 U.S. 1076 (1989). To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997), *cert. denied*, 522 U.S. 833 (1997). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." <u>Id.</u> at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the

claim 'federal.'"  Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

The petitioner bears the burden of proving exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).   "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition."  Id.; see also Breard, 134 F.3d at 619. A federal court may only consider those issues the petitioner presented to the state court. Picard v. Connor, 404 U.S. 270 (1971).  Where a petitioner has failed to exhaust his state court remedies, the federal petition should be dismissed. McDaniel v. Holland, 631 F. Supp. 1544, 1545 (S.D. W.Va. 1986) (citing Preiser v. Rodriguez, 411 U.S. 475, 477 (1973).

As noted supra, the "exhaustion" doctrine requires a federal habeas petitioner to have presented all federal claims – in federal terms – to the highest state court prior to presenting them for federal habeas review. Picard at 275. This requirement ensures the State is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Id. To exhaust a claim in state court, the petitioner must "expressly raise that same federal constitutional claim in state court that he raises in federal court." Diaz v. Weisner, 2006 U.S. Dist. LEXIS 56583, at *31 (W.D.N.C. Aug. 1, 2006).  "It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citations omitted).

In West Virginia, post-conviction habeas corpus proceedings are governed by W.Va. Code 53-4A-1, et seq., and the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia. See Markley v. Coleman, 215 W.Va. 729, 732, 601 S.E.2d 49 (2004). Prisoners may exhaust their available state court remedies either by stating cognizable federal

constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53- 4A-1, followed by filing a petition for appeal from an adverse ruling in the WVSCA. Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); McDaniel, 631 F. Supp. at 1545. A federal court may only consider those issues the petitioner presented to state court,[29] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c).

A prisoner may also exhaust his state court remedies by filing a petition for a writ of habeas corpus under the original jurisdiction of the WVSCA. However, an original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the prisoner's State court remedies. See Moore, 879 F. Supp. at 593; McDaniel, 631 F. Supp. at 1546; see also Meadows v. Legursky, 904 F.2d 903, 908-909 (4th Cir. 1990)(citation omitted) abrogated on other grounds by Trest v. Cain, 522 U.S. 87, 89 (1997)).

Here, Petitioner has filed a direct appeal, a pro se and then an amended state petition for writ of habeas corpus. Thereafter, he initiated his pro se appeal of the denial of his amended state habeas petition by first filing a Notice of Appeal, as required by West Virginia Rule of Appellate Procedure ("WV RAP") 5(b) (Appeals from Circuit Court), noting that he was appealing the circuit court orders denying his habeas petition. See ECF No. 52-22 at 6. The WVSCA docketed the appeal accordingly. Thereafter, in his brief on appeal, filed pursuant to WV RAP 5(f), while Petitioner noted that he was appealing the circuit courts' two orders denying his habeas claims, he also attempted to invoke the WVSCA's original jurisdiction. ECF No. 52-23 at 8. However,

---

[29] Picard v. Connor, 404 U.S. 270 (1971).

Petitioner had already erred procedurally by first filing the Notice of Appeal and proceeding under the requirements of WV RAP 5, rather than by docketing an original jurisdiction habeas petition in accordance with the requirements of WV RAP 16 (Original Jurisdiction and Certified Questions), which is initiated *without* a Notice of Appeal, by docketing an original jurisdiction petition directly with the Clerk of the WVSCA, in compliance with WV RAP 16(b). Therefore, the WVSCA treated his appellate brief as one filed pursuant to WV RAP 5, and it issued its memorandum decision affirming the circuit court's decisions under WV RAP 21 [see ECF No. 5-24 at 2], instead of an opinion, as it would have if Petitioner had succeeded in filing an original jurisdiction petition. See WV RAP 21(c)(3). Accordingly, because Petitioner procedurally erred in his attempt to file an original jurisdiction petition, and did not raise all of his § 2254 claims in his habeas appeal to the WVSCA in the same format that he raised them in the circuit court, it cannot be said that Petitioner has exhausted his state court remedies.

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-579 (11th Cir. 1995) (citing Picard v. Conor, 404 U.S. 270, 276 (1971)). Under the "doctrine of procedural default, . . . a federal court [generally] will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012)(citation omitted). This doctrine "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases," Coleman v. Thompson, 501 U.S. 722, 732 (1991), and that Section 2254 petitioners do not evade state procedural rules governing review of criminal convictions, see Lambrix v. Singletary, 520

U.S. 518, 525 (1997) ("A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system."). Where a state court would refuse to hear a claim as a result of a petitioner's failure to observe a state procedural rule, the claim is considered to be exhausted because there is "an absence of available State corrective process." See e.g., Rose v. Lee, No. 7:07-cv-00003, 2007 WL 2050823, at *3 (W.D. Va. July 12, 2007) (citing Teague v. Lane, 489 U.S. 288, 298, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)); see also Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."); Anderson v. Benik, 471 F.3d 811, 814 (7th Cir. 2006) ("State remedies are exhausted when the petitioner does not have the 'right under the law of the State to raise, by any available procedure, the question presented.'") (quoting 28 U.S.C. § 2254(c)); Villot v. Varner, 373 F.3d 327, 337 (3rd Cir. 2004) ("[W]hen the state refuses to consider the merits of the prisoner's claims because the petitioner has failed to comply with the state's procedural requirements, his claim is nonetheless technically exhausted because 'there is an absence of available State corrective process'") (quoting 28 U.S.C. § 2254(b)(1)(B)(i)). However, even though such claims are technically exhausted, the procedural default doctrine applies to those claims in any subsequent federal habeas proceeding. See Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000) ("If claims were not exhausted in state court but would now be procedurally barred if brought in state court, then federal courts can treat the claims as if they were procedurally defaulted in the state courts.").

With regard to procedural default, the United States Supreme Court has stated:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. at 749 - 750. See also Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009).

"The assessment of whether a particular state procedure is 'independent and adequate,' so as to bar consideration of the merits of a federal constitutional claim, is a question of federal, not state, law." Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003). "A state rule is 'adequate' if it is firmly established and regularly or consistently applied by the state court, and 'independent' if it does not 'depend[] on a federal constitutional ruling." Id. at 169 (internal citations omitted). To show cause for a procedural default, a petitioner must demonstrate that the "factual or legal basis for [the] claim was not reasonably available" at the time of the default. Fisher v. Angelone, 163 F.3d at 845.

Claims that are procedurally defaulted cannot be considered in a petition for habeas corpus absent a showing of cause and prejudice or actual innocence. Murray v. Carrier, 477 U.S. 478, 495-96 (1986). "Objective factors that may constitute 'cause' include: (1) 'interference by officials that makes compliance with the State's procedural rule impracticable'; (2) 'a showing that the factual or legal basis for a claim was not reasonably available to counsel'; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel." Wright v. Angelone, 151 F.3d 151, 160 n. 5 (4th Cir. 1998)(citations omitted). To establish prejudice, the petitioner must demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." McCarver v. Lee, 221 F.3d 583, 592 (4th Cir. 2000), cert. denied, 531 U.S. 1089 (2001). To establish actual innocence, "the petitioner must show that it is more

likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298, 327 (1995).

Pursuant to W.Va. Code §53-4A-1(c), "a contention . . . and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention . . . and grounds before trial, at trial, on direct appeal . . . or in a proceeding . . . or prior petition . . . filed under the provisions of this article." This Court has previously found that W.Va. Code §53-4A-1(c) is an independent and adequate ground for finding claims procedurally defaulted and that this section has been regularly and consistently applied. See Howard v. Ballard, 5:08cv112 (N.D. W.Va. Jan. 15, 2010); see also Losh v. McKenzie, *supra*; Markley v. Coleman, 215 W.Va. 729, 732, 601 S.E.2d 49 (2004). That case was affirmed on appeal. Id.

Here, as noted *supra*, the state courts have found that Petitioner's Ground 1 and 2 claims are procedurally defaulted. Thus, they cannot be considered in this proceeding absent a showing of cause and prejudice or actual innocence.

Respondent argues that pursuant to W.Va. Code §53-4A-1(c)'s independent and adequate provisions, Petitioner's Ground One and Two claims of prejudicial pre-trial publicity and the trial court's failure to strike two challenged jurors for cause are barred from federal review because Petitioner failed to raise them either at trial or on direct appeal. See ECF No. 52 at 5.

Petitioner acknowledges the W.Va. Code § 53-4A-1 waiver presumption, but argues that it is rebuttable. ECF No. 62 at 3. Invoking the procedural default "cause and prejudice standard," he posits appellate counsel's ineffectiveness as the cause for the claims not being raised on appeal [id. at 3 – 4], and asserts that despite his repeated requests and full expectation that the issues would be included, once his appellate brief was submitted, he discovered that they had not

been.  Id. at 5.  Therefore, he argues, he did not knowingly and intelligently waive these grounds. As for prejudice, he argues that if appellate counsel had only advanced these two grounds, his appeal "would have been successful." Id.

The record confirms that these two claims were not raised on direct appeal.  Petitioner did raise the prejudicial pre-trial publicity claim as Ground One in his *pro se* habeas petition and as Ground Two in his amended petition, and he raised his federal Ground Two claim regarding the trial court's failure to strike two jurors for cause as Ground Two in his *pro se* habeas petition and as Ground Three in his amended petition. After both were dismissed as procedurally barred by the habeas court, Petitioner then raised his § 2254 Ground Two claim (failure to strike two jurors) again directly as Ground Six on appeal of his habeas to the WVSCA. He did not explicitly raise his Ground One claim of prejudicial trial publicity in the appeal of his habeas to the WVSCA, but did raise it indirectly,[30] in his prayer for relief, by requesting that the WVSCA

> thoroughly review the entirety of his very detailed *pro se* Habeas Corpus Petition
> and Memorandum of Law in support . . . originally filed in the circuit court of
> Berkeley County, and which *pro se* petition and Memorandum of Law are hereby
> fully adopted and incorporated herein and attached hereto . . . [and] that this Court
> carefully consider and . . . rule upon the actual merits of the Federal claims found
> therein.

ECF No. 52-23.  The WVSCA noted the circuit court's finding that the two claims were waived because they were capable of having been raised on appeal but were not, and adopted the circuit court's ruling on the same. ECF No. 52-24 at 3 & 6.

---

[30] Petitioner also attempted to raise this claim again via a "catch-all" claim as Error One in the appeal of his habeas, contending that the habeas court abused its discretion "by summarily dismissing" Grounds 2 – 8 and 10 of his amended habeas corpus claims as waived or fully/finally adjudicated.  As noted *supra*, this prejudicial pre-trial and trial publicity claim was Ground Two in the amended petition. However, Petitioner's attempt to construe his instant Ground 1 claim as exhausted via this means fails, because the claim raised in his "catch-all" claim of Ground 1 in his habeas appeal was now no longer the *same* claim that was raised in habeas petition(s) in circuit court, i.e., a "straight-up" claim that his state and federal constitutional rights to due process and a fair trial by an impartial jury were violated by the prejudicial pretrial and trial publicity; by framing it as a claim that *the court erred by summarily dismissing the claim* of a violation of his state and federal constitutional rights to due process and a fair trial by an impartial jury by the pretrial and trial publicity, Petitioner had rendered it a different claim than that raised in the circuit court.

With regard to ineffective assistance of counsel claims, counsel's conduct is measured under the two-part analyses outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing the reasonableness of counsel's performance, "judicial scrutiny must be highly deferential." Id. at 689-90. In fact, reviewing courts must accord post-conviction counsel the "presumption that he decided which issues most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

Second, if the Court finds that counsel's performance was unreasonable, the petitioner must then demonstrate that he was prejudiced. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." Id.

The Sixth Amendment does not require post-conviction attorneys to press every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Neither is post-conviction counsel required to raise every colorable claim on appeal. Id. at 754. To the contrary, "[w]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotations omitted). Therefore, counsel has great latitude to decide what issues to press in post-conviction proceedings, Cole v. Branker, 2008 WL 5999766 *9 (4th Cir. 2008),

Petitioner's contention that his default of the pretrial publicity claim should be excused because appellate counsel failed to include it on appeal is unsupported by the record.  Appellate counsel Prezioso, having also served as one of Petitioner's trial counsel, would have been well

aware that Petitioner's pretrial publicity claim would be unsuccessful on appeal, because prior to trial, defense counsel retained a survey research expert to conduct a venue survey, which revealed that 80% of the sample surveyed did not feel that Prophet could not get a fair trial in the county, almost 50% had no advance knowledge of the case; and 65% said that the presumption of innocence would attach; thus, the motion for change of venue was denied [see ECF No. 52-25 at 57, 66, & 69]; the transcript of that January 6, 2012 motion hearing reveals that counsel[31] did object and their objection was noted. Id. at 69.  Therefore, it is apparent that appellate counsel winnowed out the obviously-doomed claim regarding negative pretrial publicity in favor  of other grounds on which Petitioner was more likely to prevail. Petitioner has not shown that this "ignored" claim was clearly stronger than those raised; at best, he has shown that it *could* have been raised, not that it *should* have been, or that it was more meritorious than those that were raised.  Accordingly, Petitioner's argument of ineffective assistance of appellate counsel as cause for failure to raise this claim on appeal fails.  Moreover, despite Petitioner's conclusory allegation that if only the claim had been raised on appeal, the appeal would have succeeded, Petitioner has not shown prejudice: i.e., that but for appellate counsel's failure to raise this claim, the result of the proceeding would have been any different.

Likewise, Petitioner's federal Ground Two claim regarding the trial court's failure to strike two jurors for cause, (Ground Two in his *pro se* habeas petition and Ground Three in his amended petition), after being dismissed by the habeas court, was raised again as Ground Six on appeal of his habeas to the WVSCA. The WVSCA noted that the circuit court dismissed the claim as waived because it could have been raised on appeal [ECF No. 52-24 at 3] but was not, before adopting the circuit court's ruling on the same.  Id. at 6. In Prophet's amended habeas

---

[31] At that motion hearing, Prezioso was not present; Petitioner appeared with Craig Manford and attorney Andrew Arnold.  ECF No. 52-25 at 2.

petition, he argued that potential juror Manfull had been to the crime scene and knew the victims' father and grandfather; and "[a]ctual juror" Jenkins' husband worked at Berkeley County Sheriffs' Department at the time of the crime. ECF No. 52-18 at 49. Because one of the "key witnesses" for the state was a deputy with the Berkeley County Sheriffs' Department, Petitioner argued that "[o]ne can never know what influence Ms. Jenkins took into the jury deliberations as to the trustworthiness of Lieutenant Harmison." Id.  Prophet argued that Jenkins and Manfull's voire dire answers and behavior raised questions as to their impartiality and thus they should have been excused. Id. at 50.  Further, he contends that Jenkins admitted having heard her husband discuss the case, acknowledged that she knew the victim and her family; had followed the media coverage of the case, some of which was "upsetting" to her. Id. Therefore, he asserts that there was "proper cause" for the circuit court to strike them.[32] Id.

---

[32] During *voire dire*, Jenkins admitted to having heard about the case [ECF No. 52-28 at 11]; thought she had read about it on an online news site when it first happened, recalled that a mother and little boy were in the house and that there had been a fire, but her memory of specific details was vague. Id. at 68. Upon questioning, she agreed that media reports were not always accurate; that she might hear things in the courtroom that differed from what she heard previously; and understood that she had to base her decision on the evidence she heard in the courtroom. Id. at 70; see also id. at 85. Further, while her husband was a deputy at the sheriff's office at the time, the Prophet case was not his; when she first asked him about it, he knew nothing about it [id.]; later, after he heard others at work talk about it, he still told her "very little" because they usually did not talk about work. Id.; see also id. at 82. She could only recall that he told her that the victim's name was Angela; there was a little boy, and "not much left" after a fire. Id. at 71. She averred that nothing she had heard about the case would affect her ability to make a decision about it, and she had no preconceived notions about it. Id. at 71 – 72.  She indicated that she had probably first seen comments about the case on Facebook; then asked her husband about it; and when he did not know, she looked at the online news site. Id. at 72.  She went to high school with Angela Devonshire but Angela was older than she was and she only knew of her from seeing her in the hallways, and had never spoken to her. Id. at 73 – 75. She also admitted to knowing Angela's brother because he patronized the pharmacy where she worked in high school; but said they had only ever had clerk/customer-type conversations, and she did not think she had gone to school with him. Id. She understood that if she served on the jury, she could not check online about the case during the trial; would have to set aside her personal associations and follow the rules of the court. Id. at 74.  She stated that she would never want an innocent man to go to jail. Id.  She reported that her husband had left the job at the sheriff's department for a job with better pay and benefits a couple months earlier. Id. at 77; see also id. at 85. She denied that the Sheriff being a witness would bother her. Id.

She understood that if she sat on the jury, she could not talk to her husband about it or seek his legal expertise; and was certain that if the case ended up with a defense verdict, her "cop" husband would not criticize her for it, but would trust her judgment on the evidence. Id. at 78 - 79.  The Court interjected "[n]o matter which way it goes?" and she agreed.  Id. She also understood that just because someone was arrested for something, it did not mean that they were guilty. Id. at 80 - 82.

Regarding her contacts with law enforcement, she reported having participated in a law enforcement Ride-Along Program in the past [id. at 80 – 81]; having visited correctional facilities, either with her husband when he

transported people to jail, or when she visited a cousin who was in jail. Id.  She denied that she would give law enforcement the "home team advantage" in deciding the case [id. at 84] and said she did not believe that "the police always get it right[.]" Id. at 82.

She revealed her own successful past treatment for drug addiction to pain pills in 2008 – 2009, and said that it would not affect her ability to decide the case.  Id. at 82; see also id. at 86.

Afterwards, defense counsel Manford moved to strike her for cause, noting that despite her having "given all the right answers," he was concerned about her many contacts with the case. Id. at 86 – 87. The Court responded, "[c]an you point to me where she said she couldn't be fair?" Counsel replied that he believed she thought she could, but he did not believe she really could. Id. at 87. Prezioso joined in, reiterating Manford's argument and voicing his concerns, because Jenkins was a frequent reader of social media and had so many ties to law enforcement. Id. at 87 – 88.  The prosecutor countered, noting that ". . . she's not answering any of the questions incorrectly about fairness. She has positives that are contrary; I was a former addict, I know the culture, police don't always get it right. I think she's showing neutrality and that's what we look for in a juror[.]" Id. at 88. The Court noted that Jenkins "was as blunt and fair in answering questions as could be . . . in no way indicated she held any bias or prejudice or inability to weigh the evidence," before denying the defense motion to strike over defense counsels' objection. Id. at 88 – 89; see also id. at 179. Ultimately, counsel chose not to use a peremptory strike against Jenkins and she served as a juror. Id. at158.

Regarding potential juror Manfull, during *voire dire*, Manfull admitted having briefly seen glimpses about the case on TV that morning [ECF No. 52-28 at 89 – 90]; initially, he thought that was his only prior exposure. Id. at 91. Later, he indicated that when the incident first happened, he might have also briefly commented on it to others in a "did you hear about" type of conversation, but could not say for sure, since it had been two years ago. Id. at 97. Upon further questioning, he also recalled having heard about the case briefly "a couple years ago" when he and Angela Devonshire's father Sidney had worked on a job together; Devonshire was the concrete contractor and Manfull was the drywall contractor. Id. They only knew each other through their mutual work as contractors; had no personal relationship [id. at 91 - 92, 95]; any conversations they had were brief, impersonal, and job-related [id. at 91 – 92]; the only time he saw ever Devonshire on a job was first thing in the morning, but often, on a job, they did not see each other for weeks. Id. at 101. He had also once worked on another job with Devonshire, but it was not during the time of the case. Id. at 92. He denied future plans to work on jobs with Devonshire but acknowledged that in construction, it was always a possibility.  Id. at 92.

When asked if he had ever been at Devonshire's residence, he reported having gone there once to give a drywall estimate on a new home Devonshire was building there; having asked "what happened over there" and that Devonshire told him "that's where it happened at but it was all cleaned up."  Id. When defense counsel asked what Devonshire's demeanor was when he told Manfull this, and if it had bothered Manfull, Manfull replied "[n]ot as a contractor.  I was there to give a price."  Id. at 97 – 98.  When asked if it had an effect on him as a human being, Manfull admitted "[y]ou could see, you know,  . . . I mean, he looked like – I'm sure it hurt, you know? I'm sure it hurt. I mean, my goodness, you take your daughter." Id. at 98.  Nonetheless, he stated "we didn't talk or discuss anything about that." Id. He denied getting the Devonshire drywall job. Id. at 103 – 04.

He denied that he would feel uncomfortable if he were a juror and Devonshire were a witness [id.  at 92 – 93]; or that he would worry about Devonshire's opinion, if he were a juror and they returned a defense verdict; and stated that he would treat Devonshire's testimony the same as that of any other witness. Id. at 93. He ever denied discussing the case with Devonshire. Id. at 94. Manford asked if he knew anything about Devonshire's politics or anything Devonshire had done publicly about the case; Manfull indicated that he had seen a brief glimpse of Devonshire on TV  once in passing, but could not recall why and asked "[i]s he an advocate for something?" Id. He denied that if he were chosen as a juror, the prospect of ever running into Devonshire in the future would affect his ability to be fair and impartial. Id. at 98 – 99.

Manford also asked about Manfull's acquaintance with "Ms. Leatherman," an employee in the prosecutor's office. Id. at 94. Manfull indicated that he had been her Sunday school teacher about 25 years earlier [id. at 95] but denied that his acquaintance with her or her parents would affect his ability to be fair and impartial. Id.  He further denied ever contracting with the sheriff's office during his other employment as a Jefferson County process server. Id.

Manfull admitted having a cousin who was an alcoholic and a heroin addict who had gone to rehab and turned his life around [id. at 99 – 100]; denied that hearing that someone in the case used heroin would affect him [id. at 100]; and had no opinion on people who sold drugs [id.]; however, he asserted that if someone who worked for him sold drugs, he would fire them, because he didn't "put up with that." Id. at 101 – 02. Nonetheless, he opined that if someone wanted to use drugs it was their choice, but that it was illegal and he wished the country did not have

Again, given a review of the entire record and all of the evidence adduced at trial, it is apparent that even though defense counsel ensured that their objections on their motions to strike these two jurors for cause was preserved for appeal. However, when it came time to appeal, appellate counsel, as a skilled advocate does, winnowed out this claim in favor of more promising grounds on which Petitioner was more likely to prevail.  Petitioner has not shown that this "ignored" claim was clearly stronger than those raised.  At most, he has shown that it could have been raised, not that it should have been, or that it was any more meritorious than those that were raised.  Moreover, despite his conclusory allegation that if appellate counsel had only included these claims, then his direct appeal would have been successful, Petitioner has not shown cause, i.e., that the result of the proceeding would have been any different.  Accordingly, the undersigned agrees with Respondent that Petitioner's Ground One and Ground Two claims are procedurally barred.

Next, the undersigned will examine Petitioner's remaining claims.

- **Ground 3**: Petitioner's federal constitutional rights to due process of law, to equal protection of the law, and to a fair trial were violated under the United States

---

such a drug problem. Id. at 102. When the prosecutor asked if he could fairly weigh the testimony of someone who sold/used drugs, he indicated that he could [id.], and that he would judge the testimony of a drug user the same as that of anyone else. Id. at 102 - 03.

Afterwards, defense counsel Prezioso moved to strike Manfull for cause, because Manfull had been out to the Devonshire property and had independent knowledge. Id. at 105. The court pointed out that it wasn't the fire property. Id. Prezioso replied "I think that's what his testimony was." Id. The court replied that "[h]e said he looked over there, what happened over there.  He . . . was giving a quote on a house." Id. After discussion between the court, the prosecutor, and defense counsel, the court determined that Manfull did not "see" the burned property because the remains of it had already been removed by then and that there was no dispute in the case that an arson had occurred. Id. at 105 – 06.  Prezioso next objected because Manfull might have a future business relationship with Devonshire, and had sympathized with Devonshire, after seeing Devonshire's emotional reaction when the property was mentioned. Id. at 107 - 08. The court disagreed, saying that any juror would agree that Devonshire would be hurt by what happened, but that "the issue is not whether . . . a tragedy took place.  The issue is whether . . . . the Defendant is responsible for it." Id. at 108. Finally, Manford objected because Manfull actually had personal contact with Devonshire. Id. The court noted that it was a casual business relationship, no more important than the limited contacts reported by several potential jurors, one of whom reported that Manford had done a will for her years earlier and that Manfield's partner had once done a real estate closing for her; noting that Manfull was "pretty adamant he's going to give everybody a fair shake." Id. at 109.  The court denied the motion to strike over counsels' objection. Id.; see also id. at 179. Ultimately, counsel used one of their peremptory strikes and Manfull did not serve as a juror. Id. at 158.

Constitution's Fifth, Sixth, and Fourteenth Amendments, by the prosecutor's knowing use of false testimony used to obtain the Petitioner's convictions. (Joseph Medina testimony).[33] See ECF No. 13 at 9 – 10.

This claim was raised on appeal as Ground 5, with a much greater detailed factual basis (set forth in sub-grounds (a) – (h)), but without a federal basis. See ECF No. 52-14 at 50.

It was raised again as *pro se* habeas petition Ground 3 with a detailed factual basis and with a federal basis [see ECF No. 52-16 at 59], and raised again with a federal basis in Petitioner's amended habeas petition as Ground 4. See ECF No. 52-18 at 54.

However, on appeal, Petitioner raised it as Ground 4(a): *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when at trial: a) the state knowingly used false testimony." See ECF No. 52-23 at 31 & 33. Because it was no longer the *same* claim that was raised in the habeas court, i.e., a "straight-up" claim of prosecutorial misconduct for knowingly using false testimony at trial, but now a claim that the *habeas court erred* in denying relief on that underlying claim, it is not exhausted.

- **Ground 4**: Petitioner's federal constitutional rights to due process of law, to a fair trial by an impartial jury, to not be compelled to be a witness against himself, to equal protection of the law, to present a defense, to the effective assistance of counsel, and to the access of evidence under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the state impeached the Petitioner's credibility by fundamentally unfair means and by attacking his post-Miranda silence. See ECF No. 13 at 11 – 12.

On appeal, Petitioner raised this claim as Ground 3, "[t]he circuit court committed reversible error when it failed to grant Petitioner's motion for a new trial as the State improperly used Petitioner's post arrest/pre-trial silence to impeach Petitioner." See ECF No. 52-14 at 45. However, there was no federal basis for the claim.

In his *pro se* habeas action, the claim was raised as Ground 4, now with a federal basis. See ECF No. 52-16 at 68.

In his amended habeas petition, Prophet raised the claim as Ground 5(a), asserting that "Petitioner . . . was deprived of his federal and state constitutional right[s] to [] due process and to a fair trial when the prosecutor impeached Petitioner through unfair means, (a) by the prosecutor's inquiries into his post-arrest silence, which denied his right to due process and to a fair trial." See ECF No. 52-18 at 60.

On appeal of his habeas petition(s), Petitioner raised the claim as Ground 2, asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article

---

[33] As his sole factual basis for this claim, Petitioner cites to the fact that the prosecutor permitted Medina to testify and imply falsely that he had not spoken adversely about Petitioner to the authorities regarding the crimes at issue during his first interview, because he had not had an attorney present. See ECF No. 13 at 10.

III, §§ 3, 5, 10, and 14, when at trial, the state impeached the Petitioner's credibility by fundamentally unfair means by attacking his post-<u>Miranda</u> silence." <u>See</u> ECF No. 52-23 at 25 (emphasis added). Because this is not the same "straight-up" claim that the state impeached his credibility by attacking his post-<u>Miranda</u> silence, but now a claim that the *habeas court erred* by denying relief on that underlying claim, it is not exhausted.

- **Ground 5**: Petitioner's federal constitutional rights to due process of law, to a fair trial, and to equal protection of the law were violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments when the state rendered the Petitioner's trial fundamentally unfair by introducing at trial legally inadmissible and unduly prejudicial evidence to the jury in the form of a fictional novel previously authored by Petitioner. <u>See</u> ECF No. 13-1 at 1.

  Petitioner raised this claim on direct appeal as Ground 2, asserting that "[t]he circuit court committed reversible error when it failed to grant Petitioner's motion for a new trial as the use of Petitioner's previously authored fictional novel was improper and unduly prejudicial." <u>See</u> ECF No. 52-14 at 39. However, there was no federal basis for the claim.

  Petitioner raised this claim as Ground 5 in his *pro se* habeas petition, now with a federal basis.  <u>See</u> ECF No. 52-16 at 79. Petitioner also raised this claim as Ground 6 and as Ground 8(d) and (e) in his amended habeas petition, both with federal bases. <u>See</u> ECF No. 52-18 at 68 & 81.

  On appeal of his habeas petition(s), Petitioner raised this claim as Ground 3, asserting that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10, and 14, when the state rendered the Petitioner's trial fundamentally unfair by introducing legally inadmissible and unduly prejudicial evidence to the jury in the form of a fictional novel previously authored by the Petitioner." <u>See</u> ECF No. 52-23 at 30 (emphasis added).  Because this is no longer the same "straight-up" claim that his trial was rendered fundamentally unfair by the inadmissible and prejudicial use of his fictional novel, but now a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 5 is not exhausted.

- **Ground 6**: Petitioner's federal constitutional rights to due process of law, to a fair trial, to present a complete defense, and to equal protection of the law were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court refused to give the jury an instruction on the defense's theory of the case. <u>See</u> ECF No. 13-1 at 1.

  Petitioner raised this claim as Ground 4 on direct appeal, but without a federal basis. <u>See</u> ECF No. 52-14 at 48.

  He raised it in both his *pro se* habeas petition as Ground 6, and as Ground 7 in his amended petition, with a federal basis each time. <u>See</u> ECF No. 52-16 at 91; <u>see also</u> ECF No. 52-18 at 78.

On appeal of his habeas petition(s), Petitioner did not raise this claim. However, he requested that the WVSCA "thoroughly review the entirety of his very detailed *pro se* Habeas Corpus Petition and Memorandum of Law in support thereof, originally filed in the circuit court of Berkeley County, and which *pro se* petition and Memorandum of Law are hereby fully adopted and incorporated herein, and attached hereto, with the just and fervent desire that this Court carefully consider and openly on-the-record, address and rule upon the actual merits of the Federal claims found therein."   See ECF No. 52-23 at 8.   Further, as Ground 1 on his appeal, he asserts a "catch-all claim," asserting that *the Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by summarily dismissing Grounds 2 through 8 and 10 of his habeas corpus claims for relief, as being either waived or fully and finally adjudicated.*   Id. at 21 (emphasis added). Because his claim that the trial court refused to give the jury an instruction on the defense's theory of the case was Ground 6 in his *pro se* petition and Ground 7 in his amended petition, presumably Petitioner thought that this "catch-all" claim would bring this claim that the trial court refused to give the jury an instruction on the defense's theory of the case back in.   However, the claim raised in Ground 1 in his habeas appeal was never a "straight-up" claim that the trial court refused to give the jury an instruction on the defense's theory of the case; instead, it was now a claim that the *habeas court erred* in ruling on the merits of his underlying amended habeas Grounds 2 – 8 and 10 claims, a different claim entirely.   Thus, Ground 6 is not exhausted.

- **Ground 7(a)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (a) unlawfully attacking the Petitioner's constitutional rights to silence, to counsel, and to evidence. See ECF No. 13-1 at 1.

On direct appeal, as Ground 6(b), Petitioner asserted that his conviction should be reversed as his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (b) attacked his constitutional right to silence.   See ECF No. 52-14 at 60 – 61.   Petitioner relied on only state law and stated no federal basis for the claim.

Petitioner raised this claim in his *pro se* habeas petition as Ground 7(a), and in his amended petition as Ground 8(a), asserting a federal basis.   See ECF No. 52-16 at 94 & 96; see also ECF No. 52-18 at 81.

On appeal of his habeas petition(s), Petitioner did not raise this claim. However included the request (noted *supra*) that the WVSCA review and incorporate by reference his *pro se* petition.   See ECF No. 52-23 at 8. Further, as Ground 1 on his appeal, he asserts a "catch-all claim," asserting that *the Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by summarily dismissing Grounds 2 through 8 and 10 of his habeas corpus claims for relief, as being either waived or fully and finally adjudicated.*   Id. at 21 (emphasis added). Because his prosecutorial misconduct claim for attacking his constitutional right

to silence claim was Ground 7(a) in his *pro se* petition and Ground 8(a) in his amended petition, presumably Petitioner thought that this "catch-all" claim would bring this unlawful attacking of Petitioner's constitutional right to silence claim back in. However, the claim as raised in Ground 1 on his habeas appeal was never a "straight-up" claim of the unlawful attacking of Petitioner's constitutional right to silence; it was now a claim that the *habeas court erred* in ruling on the merits of his underlying amended habeas Grounds 2 – 8 and 10 claims, an entirely different claim. Thus, Ground 7(a) is not exhausted.

- **Ground 7(b)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (b) using her position and status as an agent of the State to undermine the Petitioner 's credibility and testimony, and to bolster the testimony of State witnesses.  See ECF No. 13-1 at 1 - 2.

    On  direct appeal,  as Ground 6(a), Petitioner  asserted that his conviction should be reversed because his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (a) used her position to undermine Petitioner's credibility and to bolster the state's witnesses' credibility. See ECF No. 52-14 at 58 - 60.  However, Petitioner stated no federal basis for the claim.

    Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(b) and in his amended petition as Ground 8(b), both asserting a federal basis.  See ECF No. 52-16 at 94, 96 – 97; see also ECF No. 52-18 at 81.

    On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(d), ECF No. 52-23 at 31 & 33, asserting that the *Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (d) used her position and status as a State agent to undermine the Petitioner's credibility, and to bolster the testimony of state witnesses.  See ECF No. 52-23 at 31 & 33. Because this was not a "straight-up" claim that the prosecutor improperly used her position to undermine Petitioner's credibility and bolster that of the state's witnesses, but now a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, it was an entirely different claim. Thus, Ground 7(b) is not exhausted.

- **Ground 7(c)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of

evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (c) knowingly eliciting and utilizing false testimony to secure the Petitioner's conviction. See ECF No. 13-1 at 2.

On direct appeal, as Ground 6(c), Petitioner asserted that his conviction should be reversed because his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (c) knowingly elicited and used false testimony. See ECF No. 52-14 at 58 – 59 & 61. Petitioner stated no federal basis for the claim.

Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(c) and in his amended petition as Ground 8(c), both asserting a federal basis. See ECF No. 52-16 at 94, 97 – 98; see also ECF No. 52-18 at 81.

On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(a), asserting that the *Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (a) knowingly used false testimony. See ECF No. 52-23 at 31 – 32. Because this was not a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor knowingly used false testimony, but rather a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, it was an entirely different claim. Thus, Ground 7(c) is not exhausted.

- **Ground 7(d)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (d) presenting under the guise of impeachment knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence in the form of a fictional novel authored by the Petitioner. See ECF No. 13-1 at 2.

On direct appeal, as Ground 6(d), Petitioner asserted that his conviction should be reversed as his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (d) intentionally introduced irrelevant and highly prejudicial evidence, after stipulating in writing not to present the same. See ECF No. 52-14 at 58 – 59 & 61 - 62. Petitioner stated no federal basis for the claim.

Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(d) and in his amended petition as Ground 8(d), both asserting a federal basis. See ECF No. 52-16 at 94 & 98; see also ECF No. 52-18 at 81.

On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(a), asserting that the *Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (e) improperly presented under the guise of impeachment unduly prejudicial evidence in the form of a fictional novel previously authored by Petitioner. See ECF No. 52-23 at 31 & 33. Because this was no longer a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor intentionally introduced Petitioner's unduly prejudicial novel under the guise of impeachment, but rather, now a claim that the *habeas court erred* in ruling on the merits of the underlying prosecutorial misconduct claim, it was an entirely different claim. Thus, Ground 7(d) is not exhausted.

- **Ground 7(e)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (e) knowingly and deliberately misstating, misrepresenting, and distorting scenes and narratives from the Petitioner's novel for the obvious purpose of unduly prejudicing the Petitioner.  See ECF No. 13-1 at 2.

On direct appeal,  as  Ground 6(e), Petitioner asserted that his conviction should be reversed because his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (e) willfully and deliberately misstated and misrepresented scenes from Petitioner's novel for the express purpose of illicitly prejudicing Petitioner. See ECF No. 52-14 at 58 – 59 & 62 - 63. Petitioner relied on only state law and stated no federal basis for the claim.

Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(e) and in his amended petition as Ground 8(e), both asserting a federal basis.  See ECF No. 52-16 at 94 & 98 - 100; see also ECF No. 52-18 at 81 & 85.

On appeal of his habeas petition(s), Petitioner did not raise this claim.  However, as noted *supra*, in his brief on appeal of his habeas petition(s), he requested that the WVSCA "thoroughly review" his attached *pro se* habeas petition and its memorandum of law, which he incorporated by reference.  See ECF No. 52-23 at 8.  Further, Ground 1 on his appeal asserted a "catch-all claim," arguing that *the Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by summarily dismissing Grounds 2 through 8 and 10 of his habeas corpus claims for relief, as being either waived or fully and finally adjudicated.* Id. at 21 (emphasis added). Because his prosecutorial misconduct claim for knowingly and deliberately misstating, misrepresenting, and distorting scenes and narratives from the Petitioner's novel to prejudice Petitioner  was Ground 7(e) in his *pro se* petition and

Ground 8(e) in his amended petition, presumably Petitioner thought that these "catch-all" claims would bring this claim back in.  Because the claim raised in Ground 1 on his habeas appeal was never a "straight-up" claim of prosecutorial misconduct for knowingly and deliberately misstating, misrepresenting, and distorting scenes and narratives from the Petitioner's novel to prejudice him, and was now a claim that the *habeas court erred* in ruling on the merits of his underlying amended habeas Grounds 2 – 8 and 10 claims, it was an entirely different claim.   Thus, Ground 7(e) is not exhausted.

- **Ground 7(f)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (f) deliberately misquoting numerous witness' testimony, including the Petitioner's, in order to unduly prejudice the Petitioner.  See ECF No. 13-1 at 2.

     On  direct appeal,  as  Ground 6(f), Petitioner asserted that his conviction should be reversed because his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (f) intentionally misquoted witness testimony.  See ECF No. 52-14 at 58 – 59 & 63 - 65.  However, Petitioner relied on only state law and stated no federal basis for the claim.

     Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(f) and in his amended petition as Ground 8(f), both asserting a federal basis.  See ECF No. 52-16 at 94 & 100 - 06; see also ECF No. 52-18 at 81 & 85 - 86.

     On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(f), asserting that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (f) deliberately misquoted numerous witnesses'[] testimony, including the Petitioner's, in order to unduly prejudice [him]." See ECF No. 52-23 at 31 & 33. Because this is no longer a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor deliberately misquoted witnesses' testimony to unduly prejudice Petitioner, but rather, now a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, it is an entirely different claim.  Thus, Ground 7(f) is not exhausted.

- **Ground 7(g)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial

misconduct and made numerous improper remarks before the jury [including] (g) repeatedly arguing supposed facts not in evidence. See ECF No. 13-1 at 2.

Petitioner did not raise this claim on direct appeal.

Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(g) and in his amended petition as Ground 8(g), both asserting a federal basis.  See ECF No. 52-16 at 94 & 106 - 07; see also ECF No. 52-18 at 81 & 86.

On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(g), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (g) repeatedly argued supposed facts not in evidence." See ECF No. 52-23 at 31 & 33. However, this is not a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor repeatedly arguing facts not in evidence. Instead, it is now a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, an entirely different claim.  Thus, Ground 7(g) is not exhausted.

- **Ground 7(h)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (h) inundating the jury with improper remarks during closing arguments. See ECF No. 13-1 at 2.

On direct appeal, as Ground 6(h), Petitioner asserted that his conviction should be reversed as his due process rights were violated when the prosecution made improper remarks and engaged in prosecutorial misconduct [when she] (h) inundated the trial with improper remarks. See ECF No. 52-14 at 58 – 59 & 66 - 72. However, Petitioner relied on only state law and stated no federal basis for the claim.

Petitioner raised this claim in his *pro se* habeas petition as Ground 7(h), asserting a federal basis. He did not raise it his amended petition. See ECF No. 52-16 at 94 & 107 - 11;

On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(h), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (h) inundated the jury with improper remarks during her closing argument." See ECF No. 52-23 at 31 & 33. However, this is not a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor

inundated the jury with improper remarks during closing argument. Instead, it is now a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, an entirely different claim. Thus, Ground 7(h) is not exhausted.

- **Ground 7(i)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the prosecutor . . . engaged in prosecutorial misconduct and made numerous improper remarks before the jury [including] (i) engaging in other misconduct that unduly prejudiced the Petitioner. See ECF No. 13-1 at 2.

  Petitioner did not raise this claim on direct appeal.

  Petitioner raised this claim in both his *pro se* habeas petition as Ground 7(i) and in his amended petition as Ground 8(i), both asserting a federal basis.  See ECF No. 52-16 at 94 & 111 - 15; see also ECF No. 52-18 at 81, 82 – 85, & 86 - 87.

  On appeal of his habeas petition(s), Petitioner raised this claim as Ground 4(f), asserting that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's State and Federal Constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10 and 14, when at trial, the state (i) engaged in other misconduct that unduly prejudiced the Petitioner." See ECF No. 52-23 at 31 & 33. However, this is not a "straight-up" claim that prosecutorial misconduct occurred when the prosecutor engaged in misconduct that unduly prejudiced Petitioner, but rather, now a claim that the *habeas court erred* in ruling on the merits of this underlying claim of prosecutorial misconduct, it is an  entirely different claim.  Thus, Ground 7(i) is not exhausted.

- **Ground 8(a)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (a) prior to trial, making an improper, passionate, and extremely prejudicial and biased remark in open court regarding his opinion of the Petitioner's guilt and culpability in the crimes at issue.[34]  See ECF No. 13-1 at 2.

  This claim was raised as Ground 7(a) on direct appeal, asserting that "Petitioner's

---

[34] The undersigned notes that this claim is also internally inconsistent. The "improper, passionate, and extremely prejudicial and biased remark" that was made in open court described in Ground 7(a) on appeal, in Ground 8(a) in Petitioner's *pro se* habeas petition, and in Ground 9(a) in his amended petition, was a statement made by the court *in a pre-trial hearing*, the day before trial, long before any jury had been convened.  See ECF No. 52-14 at 72 – 73; ECF No. 52-16 at 116; and ECF No. 52-18 at 87 - 88.

conviction should be reversed as his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct, when it (a) made a passionate and prejudicial argument regarding Petitioner's culpability for the crimes at issue. See ECF No. 52-14 at 72 – 73.  The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition, and it does not exhaust this claim.

Petitioner's *pro se* habeas petition raises this claim as Ground 8(a), now with a federal basis.  See ECF No. 52-16 at 115 – 18. Likewise, Petitioner raised this claim as Ground 9(a) in his amended habeas petition, also with a federal basis.  See ECF No. 52-18 at 87 – 89.

On appeal of his habeas petition(s), Petitioner raised this claim as Ground 5(a), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia  Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when]: (a) prior to trial, [by] making an improper, passionate, and extremely prejudicial and biased remark in open court regarding his opinion of the Petitioner's guilt and culpability in the crimes at issue." See ECF No. 52-23 at 34 – 35 (emphasis added).  Because this is no longer the same "straight-up" claim that the trial court engaged in bias and misconduct by making prejudicial remarks in front of the jury, but now a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(a) is not exhausted.

- **Ground 8(b)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (b) prior to trial, deliberately, improperly, and prejudicially manipulating, or otherwise coercing, a State witness [Joseph Medina] into artificially strengthening the State's case against the Petitioner.[35] See ECF No. 13-1 at 2.

This claim was raised as Ground 7(b) on direct appeal, asserting that "Petitioner's conviction should be reversed as his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct, when it (b) [coerced state witness Joseph Medina into testifying by rejecting a plea deal for him in a different case, to pressure him into testifying at Petitioner's trial] issue. See ECF No. 52-14 at 72 – 73. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the

---

[35] Likewise, this claim is internally contradictory as well. The "improper coercion" of the state's witness, Joseph Medina, regarding the circuit court's rejecting his potential plea deal in order to force him to testify at Petitioner's trial is the same claim described in Ground 7(b) on direct appeal, Ground 8(b) in his *pro se* petition, and in Ground 9(b) in his amended petition; these alleged actions would obviously have had to take place long before any jury was convened.  See ECF No. 52-14 at 73 – 74; ECF No. 52-16 at 115, 118 - 120; & ECF No. 52-18 at 87 - 89.

Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it has a different federal basis and is not exhausted.

Petitioner's *pro se* habeas petition raises this claim as Ground 8(b), now with a federal basis.  See ECF No. 52-16 at 115, 118 – 120. Likewise, Petitioner raised this claim as Ground 9(a) in his amended petition, also with a federal basis.  See ECF No. 52-18 at 87 – 89.

On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(a), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia  Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when]: (a) prior to trial, [by] making an improper, passionate, and extremely prejudicial and biased remark in open court regarding his opinion of the Petitioner's guilt and culpability in the crimes at issue." See ECF No. 52-23 at 34 – 35 (emphasis added).   Because this is no longer the same "straight-up" claim that the trial court engaged in bias and misconduct by making prejudicial remarks in front of the jury, but now a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(b) is not exhausted.

- **Ground 8(c)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, [when] (c) during jury selection, [the court] improperly and prejudicially refused to strike two biased jurors for cause, one of which ended up on the Petitioner 's impaneled jury. See ECF No. 13-1 at 2.

    This claim is merely a reiteration of Petitioner's § 2254 Ground 2 claim, which has already been deemed procedurally barred because it was not raised on appeal.  See ECF No. ECF No. 52-19 at 11 – 12; see also ECF No. 52-24 at 3, 5, & 6.

- **Ground 8(d)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (d) during cross-examination, permitting the prosecutor, under the guise of impeachment, to present knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out. See ECF No. 13-1 at 2.

    This claim was raised on direct appeal as Ground 7(d), asserting that asserting that "Petitioner's conviction should be reversed as his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct, when it (d)

permitted the State to impeach [Petitioner's] . . . testimony by allowing the prosecutor to present irrelevant, unduly prejudicial, highly inflammatory, and improper impeachment evidence in the form of a novel the Petitioner had authored." See ECF No. 52-14 at 72, 75 – 77. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition as Ground 8(d), which does not exhaust this claim.

Petitioner's *pro se* habeas petition raises this claim as Ground 8(d), now with a federal basis. See ECF No. 52-16 at 115, 120 – 22. Likewise, Petitioner raised this claim as Ground 9(d) in his amended petition, also with a federal basis. See ECF No. 52-18 at 87, 89 – 90.

On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(d), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when]: (d) during cross examination, permitting the prosecutor, under the guise of impeachment, to present knowingly irrelevant, legally inadmissible, and unduly prejudicial evidence to the jury in the form of a fictional novel that had been stipulated out." See ECF No. 52-23 at 34 – 35 (emphasis added). Because this is no longer the same "straight-up" claim that the trial court knowingly permitted the prosecutor, under the guise of impeachment, to present to the jury Petitioner's irrelevant, inadmissible, and unduly prejudicial fictional novel that had been stipulated out, but rather, now a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(d) is not exhausted.

- **Ground 8(e)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (e) during cross-examination, permitting the prosecutor, over defense objection, to attack the Petitioner 's post-Miranda silence. See ECF No. 13-1 at 2.

This claim was raised on direct appeal as Ground 7(c), asserting that Petitioner's conviction should be reversed because his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct [by] (c) permitting the prosecutor to cross-examine him regarding his post-Miranda silence. See ECF No. 52-14 at 72 & 75. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition as Ground 8(d), which does not exhaust the claim.

Petitioner's *pro se* habeas petition raises this claim as Ground 8(e), now with a federal basis.  See ECF No. 52-16 at 115, 123 – 24. Likewise, Petitioner raised this claim as Ground 9(e) in his amended petition, also with a federal basis.  See ECF No. 52-18 at 87 & 90.

On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(e), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia  Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when]: (e) during cross examination, permitting the prosecutor, over defense objection, to attack Petitioner's post-Miranda silence."  See ECF No. 52-23 at 34 – 35 (emphasis added).  Because this is no longer the same "straight-up" claim that the trial court knowingly permitted the prosecutor to attack Petitioner's post-Miranda silence, but rather, now a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(e) is not exhausted.

- **Ground 8(f)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (f) during cross-examination, accusing the Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor. See ECF No. 13-1 at 2.

This claim was raised on direct appeal as Ground 7(f), asserting that Petitioner's conviction should be reversed because his due process rights were violated when the trial court made improper remarks and engaged in judicial misconduct [by] (f) accused him of being evasive and "argumentative" in his answers to the prosecutor. See ECF No. 52-14 at 72 & 77. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition as Ground 8(f), which does not exhaust the claim.

Petitioner's *pro se* habeas petition raises this claim as Ground 8(f), now with a federal basis.  See ECF No. 52-16 at 115, 124 – 130. Likewise, Petitioner raised this claim as Ground 9(f) in his amended petition, also with a federal basis.  See ECF No. 52-18 at 87 & 90.

On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(f), asserting that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's

Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when]: (f) during cross examination, accusing the Petitioner, in front of the jury, of being "argumentative," inconsistent, and evasive in his answers to the prosecutor." See ECF No. 52-23 at 34 – 35 (emphasis added). Because this is no longer the same "straight-up" claim that the trial court accused Petitioner, in front of the jury, of being argumentative and evasive in his answers to the prosecutor, but rather, now, a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(f) is not exhausted.

- **Ground 8(g**): Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (g) attempting to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against the Petitioner. See ECF No. 13-1 at 2.

    This claim was raised on direct appeal as Ground 7(g), asserting that throughout the trial, the court consistently attempted to guide and advise the prosecutor about how to conduct her prosecution of the case against Petitioner. See ECF No. 52-14 at 72 & 78 - 79. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition as Ground 8(g), which does not exhaust the claim.

    Petitioner's *pro se* habeas petition raises this claim as Ground 8(h), now with a federal basis. See ECF No. 52-16 at 115, 131 – 33. Likewise, Petitioner raised this claim as Ground 9(h) in his amended petition, also with a federal basis. See ECF No. 52-18 at 87 & 91.

    On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(h), asserting that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when it]: (h) attempted to guide and advise the prosecutor throughout the entirety of the case on how to successfully conduct the prosecution of her case against the Petitioner." See ECF No. 52-23 at 34 – 35 (emphasis added). Because this is no longer the same "straight-up" claim that the trial court attempted to guide and advise the prosecutor on how to conduct her case, but rather, now, a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(g) is not exhausted.

- **Ground 8(h)**: Petitioner's federal constitutional rights to due process of law, to not be compelled to be a witness against himself, to the assistance of counsel, to the access of evidence, to equal protection of the law, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury, by (h) engaging in other more subtle, though no less prejudicial, conduct to the detriment of the Petitioner.[36] See ECF No. 13-1 at 2.

    This claim was *possibly* raised on direct appeal as Ground 7(e), asserting that throughout the trial, the court refused to look at Petitioner as he testified, instead of watching him attentively the way the court did when others testified, creating the visual impression "to make clear to those watching that . . . [the court] neither liked nor believed . . . Petitioner[,] . . . [and] only . . . looked at . . . Petitioner . . . to scowl at, interrupt, or chastise" him.[37]  See ECF No. 52-14 at 72 & 77 - 78. The claim was made with a federal basis, i.e., as a violation of Petitioner's right under the Fifth Amendment's Double Jeopardy Clause. Id. at 72. However, there is no mention of any violation of Petitioner's Sixth and Fourteenth Amendment rights, thus, it was raised with a different federal basis that the claim raised in his federal petition as Ground 8(h), which does not exhaust the claim.

    Petitioner's *pro se* habeas petition raises this claim as Ground 8(i), now with a much more detailed factual basis, and with a federal basis. See ECF No. 52-16 at 115, 132 – 35. Likewise, Petitioner raised this claim as Ground 9(i) in his amended petition, now listing three examples of "subtle cues of bias," also with a federal basis.  See ECF No. 52-18 at 87 & 92.

    On appeal of his habeas petition(s), however, Petitioner raised this claim as Ground 5(i), asserting that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia  Constitution's Article III, §§ 3, 5, 10, and 14, when the trial court engaged in bias and misconduct and made prejudicial remarks before the jury [when it]: (i) engaged in other more subtle, though no less prejudicial conduct to the Petitioner's detriment. See ECF No. 52-23 at 34 – 35 (emphasis added).  Because this is no longer the same "straight-up" claim that the trial court engaged in other more subtle, though no less prejudicial conduct toward the Petitioner, but rather, now, a claim that the *habeas court erred* by denying relief on that underlying claim, Ground 8(h) is not exhausted.

- **Ground 9**: Petitioner's federal constitutional rights to due process of law, to equal protection of the laws, to not have cruel and unusual punishment inflicted on him, and to a fair trial were violated, under the United States Constitution's Fifth, Sixth, and

---

[36] The petition does not explain what this subtle, prejudicial conduct was.

[37] The undersigned presumes that this is what Petitioner meant by "subtle" prejudicial conduct.

Fourteenth Amendments, when he was convicted by evidence insufficient to establish his guilt beyond a reasonable doubt for every element of the charged crime. <u>See</u> ECF No. 13-1 at 2 – 3.

Petitioner raised this claim as Ground 1 on direct appeal, but without a federal basis. <u>See</u> ECF No. 52-14 at 8.

He raises it as Ground 9 in his *pro se* habeas petition, now with a federal basis. <u>See</u> ECF No. 52-16 at 136, and as Ground 10 in his amended habeas petition, also with a federal basis. <u>See</u> ECF No. 52-18 at 92.

On appeal of his habeas petition(s), Petitioner does not include this claim. However, he included the request (noted *supra*) that the WVSCA review and incorporate by reference his *pro se* petition. See ECF No. 52-23 at 8. Further, as Ground 1 on his appeal, he asserted a "catch-all claim," asserting that *the Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by summarily dismissing Grounds 2 through 8 and 10 of his habeas corpus claims for relief, as being either waived or fully and finally adjudicated.* <u>Id.</u> at 21 (emphasis added). Because his "insufficient evidence" claim was Ground 9 in his *pro se* petition but Ground 10 in his amended petition, presumably Petitioner thought that this "catch-all" claim would include this insufficient evidence claim. However, the claim as raised in Ground 1 on his habeas appeal was no longer a "straight-up" claim of insufficient evidence, but rather, now a claim that the *habeas court erred* in ruling on the merits of his underlying amended habeas Grounds 2 – 8 and 10, it is an entirely different claim. Thus, Ground 9 is not exhausted.

- **Ground 10(a)**: Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (a) failed to thoroughly and independently investigate the crime at issue. <u>See</u> ECF No. 13-1 at 3.

This claim was not raised on direct appeal.

It was raised in Petitioner's *pro se* habeas petition with a federal basis as Ground 10(a). <u>See</u> ECF No. 52-16 at 143 - 44. It was also raised with a federal basis in his amended habeas petition as Ground 11(a). <u>See</u> ECF No. 52-18 at 94 & 96.

However, on appeal of his habeas petition to the WVSCA, the claim Petitioner raised as Ground 7(a) was that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, trial counsel's failure to thoroughly and independently investigate the crime at issue. <u>See</u> ECF No. 52-23 at 37 (emphasis added). However, this is no longer the *same* "straight-up" claim of trial counsel's ineffectiveness for failing to investigate. Rather, it is now a claim alleging that the *habeas court* erred by denying relief on the underlying IAC claim. Accordingly, Ground 10(a) has not been exhausted.

- **Ground 10(b)**: Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (b) failed to failed to file a pretrial motion to suppress the introduction of the Petitioner's violent fictional novel entitled Enter the Fire: Seven Days in the Life. See ECF No. 13-1 at 3.

    This claim was not raised on direct appeal.

    It was raised with a federal basis in both Petitioner's *pro se* habeas petition as Ground 10(b) [see ECF No. 52-16 at 143 & 145] and in his amended habeas petition as Ground 11(b). See ECF No. 52-18 at 94 & 97.

    However, on appeal of his habeas petition(s) to the WVSCA, the claim Petitioner raised as Ground 7(b) was that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, trial counsel's failure to file a pretrial motion to suppress the introduction of the Petitioner's violent fictional novel entitled Enter the Fire: Seven Days in the Life. See ECF No. 52-23 at 37 (emphasis added). Because it was no longer the same "straight-up" claim of trial counsel's ineffectiveness for not filing  a motion *in limine* to suppress his fictional novel, but rather, a claim that the *habeas court* erred by denying relief on the underlying IAC claim, Ground 10(b) is not exhausted.

- **Ground 10(c)**: Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (c) failed to failed to request that a limiting instruction be given to the jury informing them that the Petitioner's fictional novel was to be limited to a specific and legitimate purpose to impeach and was not to be used as evidence of a material or substantive fact. See ECF No. 13-1 at 3.

    This claim was not raised on direct appeal.

    It was raised with a federal basis in both Petitioner's *pro se* habeas petition(s) as Ground 10(c) [see ECF No. 52-16 at 143 & 146] and  in his amended habeas petition as Ground 11(c). See ECF No. 52-18 at 94 & 97.

    However, on appeal of his habeas petition(s) to the WVSCA, the claim Petitioner raised as Ground 7(c) was that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, trial counsel's failure to request that a limiting instruction be given to the jury informing them that the Petitioner's

fictional novel was to be limited to a specific and legitimate purpose to impeach and was not to be used as evidence of a material or substantive fact. See ECF No. 52-23 at 37 (emphasis added). Because it was no longer the same "straight-up" claim of trial counsel's ineffectiveness for failing to request a limiting instruction for the jury regarding only using Petitioner's fictional novel for impeachment purposes, but rather, now a claim that the *habeas court* erred by denying relief on the underlying IAC claim, Ground 10(c) claim has not been exhausted.

- **Grounds 10(d), (e), (f), (g), (h), (i), (j), (k), and (l):**[38] Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel failed to failed to object to, and move for a mistrial for, the prosecutor's improper and unconstitutional questions regarding Petitioner's post-Miranda pre-trial silence. See ECF No. 13-1 at 3.

  These claims were not raised on direct appeal.

  They were all raised with a federal basis under the rubric of Ground 10(e) in Petitioner's *pro se* habeas petition, as a general claim that counsel was ineffective for failing to object to the prosecutor's improper comments on his post-Miranda pre-trial silence. See ECF No. 52-16 at 143 & 147. Likewise, they were all raised with a federal basis in his amended habeas petition as Ground 11(d), albeit in a more general form than they are raised here. See ECF No. 52-18 at 94 & 97 - 98.

  However, in each one of these claims, on appeal of his habeas petition(s) to the WVSCA, the claims Petitioner raised there as Grounds 7(d)(e)(f)(g)(h)(i)(j)(k) and (l) were that "*[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, the prosecutor's improper and unconstitutional post-Miranda silence remark[s] . . . See ECF No. 52-23 at 37 – 38 (emphasis added). Because they were no longer the same "straight-up" claims of trial counsel's ineffectiveness for failing to object the prosecutor's remarks about his pre-trial post-Miranda silence, generally regarding his having had two years to review all the evidence and craft a cohesive story to tell at trial, but rather, now claims alleging that the *habeas court erred* by denying relief on these underlying IAC claims, Grounds 10(d), (e), (f), (g), (h), (i), (j), (k), and (l) are not exhausted.

- **Ground 10(m):** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the

---

[38] These claims are grouped and treated as one here, because they are each merely specific examples of trial counsel's alleged failure to object to and move for mistrial for each one the prosecutor's questions regarding Petitioner's post-Miranda pre-trial silence. See ECF No. 13-1 at 3-4; ECF No. 52-16 at 143 & 147; ECF No. 52-18 at 94 & 97; and ECF No. 52-23 at 37 – 38.

ineffective assistance of his state-appointed trial counsel, when trial counsel: (m) failed to object to, and to move for a mistrial for, the prosecutor's other improper and unconstitutional remarks made during closing arguments.  See ECF No. 13-1 at 3 - 4.

This claim was not raised on appeal.

It was raised in Petitioner's *pro se* habeas petition as Ground 10(f). See ECF No. 52-16 at 143 & 150. It was raised in his amended habeas petition as Ground 11(e). See ECF No. 52-18 at 94 & 98.

However, on appeal of his habeas petition(s) to the WVSCA, the claim Petitioner raised as Ground 7(m) was that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, the prosecutor's other improper and unconstitutional remarks made during closing arguments. See ECF No. 52-23 at 37 – 38 (emphasis added). Because this is not the same "straight-up" claim of trial counsel's ineffectiveness for failing to object the prosecutor's improper closing argument remarks, but rather, a claim that the *habeas court* erred by denying relief on the underlying IAC claim, Ground 10(m) has not been exhausted.

- **Ground 10(n):** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (n) failed to object to, and move for a mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony. See ECF No. 13-1 at 3 - 4.

This claim was not raised on direct appeal.

It was raised with a federal basis in Petitioner's *pro se* habeas petition, either as Ground 10(h) (failure to object to a myriad of prejudicial circumstances throughout the entirety of the trial) [see ECF No. 52-16 at 143 & 153 – 56], or possibly through his Ground 10(d) "catch-all" claim, which stated that his state and federal due process rights to a complete defense, fair trial, and the effective assistance of counsel were violated by the ineffective assistance of his state-appointed trial counsel, for [failing to include] (d) "each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of this petition above." [see ECF No. 52-16 at 147]. However, Ground 10 in the *pro se* habeas petition falls outside of "Grounds 1 - 9," so it was not "brought back in" in this "Grounds 1 – 9" attempt by Petitioner to include it.

Petitioner does raise a stand-alone "cumulative error" claim as Ground 11 in his *pro se* petition, asserting that his state and federal constitutional rights to due process and a fair trial were violated by the cumulative effect of multiple trial errors, including "(a): "each and every individual and collective assertion and argument of error made in Grounds 1 - 10 of this petition [see ECF No. 52-16 at 156 -57]." However, that Ground 11 claim would fall outside of his Ground 10(d)'s "catch-all" claim of trial counsel's ineffectiveness for not asserting everything in "Ground 1 – 9." Likewise, it would be

excluded in his Ground 11(a) catch-all claim, because that claim only encompassed Grounds 1 – 10 of his *pro se* petition.

Petitioner *possibly*[39] raised this claim in his amended habeas petition as Ground 11(g), where he alleged that counsel "failed to lodge other appropriate objections and to raise proper grounds for his post-trial motions."[40] See ECF No. 52-18 at 94 & 98.

However, on appeal of his habeas petition to the WVSCA, did not raise a specific, stand-alone claim of counsel's ineffectiveness for failing to object to the cumulative effect of the persistent misconduct of the prosecutor. Nonetheless, each and every sub-ground of Ground 4 could be forced into the mold of this ground. Petitioner did raise as Ground 7(a) and 7(b) the claims that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, (a) the state knowingly used false testimony [and] (b) the prosecutor engaged in prosecutorial misconduct. See ECF No. 52-23 at 37 – 38 (emphasis added). Nevertheless, these are different claims than that raised in the habeas court; Petitioner is no longer raising "straight-up" claims of trial counsel's ineffectiveness  for not objecting to and moving for mistrial for, the cumulative effect of the persistent misconduct of the prosecutor, including, but not limited to, the prosecutor's knowing use of false testimony. It is now a claim that the *habeas court erred* by denying relief on the underlying IAC claim. Accordingly, Ground 10(n) is not exhausted.

- **Ground 10(o):** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (o) failed to object to, and move for a mistrial for, the trial court's many instances of blatant bias and misconduct. See ECF No. 13-1 at 3 – 4.

This claim was not raised on direct appeal.

It was raised with a federal basis in both Petitioner's *pro se* habeas petition, as Ground 10(g) (failure to object to and move for a mistrial for the trial court's many instances of blatant bias and misconduct) and as Ground 11(f) in his amended petition (counsel failed to object to myriad issues of bias and misconduct by the trial court). See ECF No. 52-16 at 143 & 152 – 53; see also ECF No. 52-18 at 94 & 98.

However, on appeal of his habeas petition to the WVSCA, the claim Petitioner raised as Ground 7(o) was that *"[t]he Circuit Court of Berkeley County abused its*

---

[39] The claim is so broadly and generally stated, it could encompass anything; because so many of Petitioner's claims could fall under its umbrella, it would require intensively combing through every detailed, repetitive argument within the record to determine which claim or claims best fit.  However, "district court judges are not required to ferret out delectable facts buried in a massive record[.]" See *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir 2011).

[40] In this ground, as one of many examples of counsels' malfeasance, Petitioner contends that counsel "failed to have Mr. Medina's false testimony stricken from the record." ECF No. 52-18 at 99).

*discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial counsel [for his failure to] object to, and to move for a mistrial for, the trial court's many instances of blatant bias and misconduct. See ECF No. 52-23 at 37 – 38 (emphasis added). Because this is not the same "straight-up" claim of trial counsel's ineffectiveness for failing to object to/move for a mistrial for the trial court's bias and misconduct, but rather, now a claim that the *habeas court erred* by denying relief on the underlying IAC claim, Ground 10(o) is not exhausted.

- **Ground 10(p):** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (p) failed to object to a myriad of prejudicial circumstances throughout the entirety of the trial. ECF No. 13-1 at 3 & 5.

  This claim was not raised on appeal.

  It was raised with a federal basis in both Petitioner's *pro se* habeas petition, as Ground 10(h) (failure to object to a myriad of prejudicial circumstances throughout the entirety of the trial) and perhaps also as Ground 11(f) in his amended petition (counsel failed to object to myriad issues of bias and misconduct by the trial court). See ECF No. 52-16 at 143 & 153 – 56; see also ECF No. 52-18 at 94 & 98.

  However, on appeal of his habeas petition to the WVSCA, the claim Petitioner raised as Ground 7(p) was that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of trial counsel [for counsels' failure to] object to, a myriad of prejudicial circumstances throughout the entirety of the trial." See ECF No. 52-23 at 37 – 38 (emphasis added). Because it was no longer the same "straight-up" claim of trial counsel's ineffectiveness for failing to object to cumulative errors occurring throughout the trial, but rather, now a claim that the *habeas court erred* by denying relief on the underlying IAC claim, Ground 10(p) is not exhausted.

- **Ground 10(q):** Petitioner's federal constitutional rights to due process of law, to present a complete defense, to a fair trial, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed trial counsel, when trial counsel: (q) failed to object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* petition. See ECF No. 13-1 at 3 & 5. This claim, therefore, includes Grounds 10(q)(1) – 10(q)(9).

  This claim was not raised on appeal.

Petitioner raised this claim as Ground 10(d) with a federal basis in his *pro se* petition. See ECF No. 52-16 at 143 & 147. He did not explicitly raise it in his amended state habeas petition; however, his memorandum in support of that amended petition requested that the habeas court "incorporate by reference" his attached *pro se* petition with its memorandum in support.  See ECF No. 52-18 at 25. Thus, the claim would have been brought back in for consideration.

On appeal of his habeas petition to the WVSCA, as Ground 7(q), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his trial . . . counsel . . . [who]**:** (q) failed to object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." ECF No. 52-23 at 37 & 38 – 39.

Because these are no longer the same "straight-up" claims of trial counsel's ineffectiveness for not objecting to/moving for a mistrial for each assertion of error made in Grounds 1 – 9 of Petitioner's *pro se* petition, but rather, now, claims that the *habeas court erred* by denying him relief on the underlying IAC claims, Petitioner's Grounds 10(q)(1) – 10(q)(9) claims of trial counsel's ineffectiveness are not exhausted.

- **Ground 10(r):** Trial counsel rendered ineffective assistance by failing to effectively argue that Petitioner suffered prejudicial pretrial publicity [*implicitly-raised claim,* see petition at ECF No. 13 at 6].

Petitioner did not raise this claim of trial counsel's ineffectiveness as a "stand-alone" claim of ineffective assistance in his *pro se* petition; however, in his Ground 10(d) "catch-all" claim, he claimed that counsel was ineffective for failing to "(d) incorporate each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of this petition."  See ECF No. 52-16 at 147.  Because Ground 1 in the *pro se* petition was his claim of prejudicial and pre-trial and trial publicity, this would have been encompassed in that catch-all claim.

Likewise, Petitioner did not raise this claim in his amended habeas petition as a sub-ground to Ground 11 (ineffective assistance of trial counsel); however, if the underlying claim regarding prejudicial pre-trial publicity had not been found to be procedurally barred, it would have been included, per Petitioner's amended petition's request that his *pro se* petition "incorporate by reference" all the claims made in his *pro se* petition.

Again, in his appeal of his habeas petition, in his Ground 7 claims of trial counsel's ineffectiveness, although this claim is not raised specifically, his Ground 7(q) "catch-all" claim asserts that counsel was ineffective for failing to "object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." See ECF No. 52-23 at 37 & 38 – 39. Because Ground 1 in the *pro se* petition was his claim of prejudicial and pre-trial and trial publicity, this would have been encompassed in that catch-all claim.

This claim is technically unexhausted, but because the claims in this petition are meritless, it will best serve the interest of judicial economy not to further belabor the exhaustion issue, and to instead exercise the discretion afforded by § 2254 as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Therefore, Petitioner's Ground 10(r) claim will be reviewed on its merits.

This claim, obviously, was not raised on direct appeal and was later found to be procedurally barred by the habeas court and the WVSCA. It is apparent from the record that appellate counsel Prezioso, who had been one of Petitioner's trial counsel, was well aware that the claim would not be successful on appeal because it was meritless. As noted *supra*, trial counsel retained a survey expert to determine whether there was, in fact, such widespread prejudicial publicity about Petitioner's crimes that he could not get a fair trial in the county. The survey results revealed that there was insufficient prejudicial pretrial publicity to preclude Petitioner's opportunity for a fair trial. Nonetheless, counsel moved for a change of venue and argued it at a hearing.

Petitioner's claim that trial counsel was ineffective for failing to "effectively argue" that Petitioner suffered prejudicial pretrial publicity is unsupported by the record, which reveals that at the January 6, 2012 motion hearing on the issue, counsel did in fact present their expert and vigorously argue the issue. After hearing argument, the court ruled against Petitioner, noting counsel's objection on the record. See ECF No. 52-25 at 69. Merely because the court denied the motion does not prove counsel was ineffective. It can be presumed that counsel did not continue to press the issue because it is clear from the record that it was non-existent. "Counsel is not required to waste the court's time pursuing frivolous legal motions." Wheeler v. United States, 2011 WL 2491376, at *15 (N.D. W.Va. Apr. 25, 2011) (citing United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978)). Because Petitioner has not established the requisite prejudice, this Court need not consider the "performance" prong of the Strickland analysis. Fields Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). Moreover, this claim has already been raised and rejected on the appeal of Prophet's habeas petition(s) albeit as a "straight up" claim that he was prejudiced by pretrial publicity. Therefore, Petitioner's attempt to now couch the same claim as one of ineffective assistance must fail.  Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)(holding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court.").

- **Ground 10(s):** Trial counsel rendered ineffective assistance by failing to successfully argue that two jurors should be struck for cause [*implicitly-raised claim,* see petition at ECF No. 13 at 8].

This claim was not raised on direct appeal.

Petitioner did not raise this claim of trial counsel's ineffectiveness as a "stand-alone" claim of ineffective assistance in his *pro se* petition; however, in his Ground 10(d) "catch-all" claim, he claimed that counsel was ineffective for failing to "(d) incorporate each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of this petition."  See ECF No. 52-16 at 147.  Because Ground 2 in the *pro*

*se* petition was his claim that the trial court improperly refused to strike two challenged jurors for cause, this would have been encompassed in that "catch-all" claim.  However, the habeas court and the WVSCA later determined that Petitioner's Ground 2 claim that the trial court improperly refused to strike to challenged jurors for cause was procedurally barred.

Likewise, Petitioner did not raise this claim in his amended habeas petition as a sub-ground to Ground 11 (ineffective assistance of trial counsel); however, if it had not been procedurally barred, it could have been "brought back in" via Petitioner's amended petition's request that his *pro se* petition "incorporate by reference" all the claims made in his *pro se* petition.

Again, in his appeal of his habeas petition(s), in his Ground 7 claims of trial counsel's ineffectiveness, although this claim is not raised specifically, his Ground 7(q) "catch-all" claim asserts that counsel was ineffective for failing to "object to, and move for a mistrial for, each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." See ECF No. 52-23 at 37 & 38 – 39. Again, because Ground 2 in the *pro se* petition was his claim that the trial court improperly refused to strike two challenged jurors for cause, this would have been encompassed in that catch-all claim. However, the habeas court and the WVSCA determined that Petitioner's amended habeas Ground 2 claim that the trial court improperly refused to strike to challenged jurors for cause was procedurally barred.

This claim, likewise is technically unexhausted, but again, because the claims in this petition are meritless, it will best serve the interest of judicial economy not to further belabor the exhaustion issue, and to instead exercise the discretion afforded by §2254(b)(2), and review this claim on its merits.

Petitioner's claim that trial counsel was ineffective for failing to "successfully argue" that two jurors should be struck for cause fails.  Petitioner cannot prove the performance prong of Strickland; the record reveals that counsel did move to strike both jurors and argued vigorously against their being seated; however, after careful and intensive questioning of both witnesses, the court ruled against defense counsel and noted their objections in the record.  See ECF No. 52-28 at 88 - 89 & 109.  Merely because the court ruled against counsel does not prove deficient performance.  Moreover, Petitioner cannot prove prejudice. First, only one of the challenged jurors (Jenkins) was actually seated.[41]  See ECF No. 52-28 at 158. When unsuccessful in arguing that the other potential juror (Manful) should be excluded, counsel used one of Petitioner's peremptory strikes to prevent it.[42] Id.  Finally, given the overwhelming evidence of Petitioner's culpability for the crimes presented at trial, it is apparent that Jenkins' serving as a juror did not prejudice Petitioner.

Moreover, this claim has already been raised and rejected on the appeal of Prophet's habeas petition(s) albeit as a "straight up" claim  that the trial court erred in

---

[41] Jenkins, as noted *supra*, although she had ties with law enforcement, did not personally know the victims; had her own drug addiction history; relatives who had been in jail; expressed neutrality toward people accused of crimes; and indicated her ability to be fair.

[42] Manful, as noted *supra*, although he indicated his willingness to fairly decide the case, reported actually being acquainted with Sidney Devonshire, the father and grandfather of the victims; having been out to the Devonshire house to give an estimate; having seen where the burned garage apartment had been; and having felt sympathetic toward Devonshire when Devonshire alluded to his loss.

denying the motions to strike the two jurors. Therefore, Petitioner's attempt to now couch the same claim as one of ineffective assistance must fail.  Boeckenhaupt v. United States, 537 F.2d at 1183.; see also United States v. Bell, 5 F.3d at 66.

- **Ground 11:** Petitioner's federal constitutional rights to due process of law, and to a fair trial by an impartial jury, were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the cumulative effect of multiple trial errors . . . [including]: **(a)** EACH AND EVERY INDIVIDUAL AND COLLECTIVE ASSERTION  AND ARGUMENT OF ERROR MADE IN GROUNDS  1 - 10 OF **THIS** PETITION ABOVE; (b) the prosecutor for the State failing to provide pre-trial notice of its intent to use 404(b) evidence against the Petitioner; (c) the trial court failing to change the venue of the trial due to massive pre-trial publicity adverse to the Petitioner; and (d) State witness Lt. Harmison deliberately and unnecessarily informing the jury during his testimony that the Petitioner was being held in the local regional jail. See ECF No. 13-1 at 5 (emphasis in original).

  This claim was not raised on appeal.

  In his *pro se* petition, as Ground 11, Petitioner alleged that his "state and federal constitutional rights - to due process of law, and to a fair trial by an impartial jury - were violated, under the United States Constitution's Fifth, Sixth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the cumulative effect of multiple trial errors, said errors consisting of: (a) each and every individual and collective assertion and argument of error made in Grounds 1 – 10 of this petition; (b) the prosecutor's failing to provide pretrial notice of its intent to use 404(b) evidence against the Petitioner; (c) the trial court's failure to change the venue of trial due to massive pre-trial publicity adverse to Petitioner; and d) state witness Lt. Harmison deliberately and unnecessarily informing the jury during his  testimony that Petitioner was being held in the local regional jail. See ECF No. 52-16 at 156 – 57.

  In his amended petition, as Ground 1, Petitioner asserted that he "was deprived of his Federal and State Constitutional [rights] to Due Process and to a fair trial due to the cumulative effect of myriad trial errors. (a) Petitioner asserts that the cumulative errors set forth below in Assignment of Errors 2 – 11 denied his right to Due Process and to a fair trial;  (b) Petitioner asserts that the State's failure to provide notice regarding its intent to introduce 404(b) evidence against him denied his right to Due Process and to a fair trial; (c) Petitioner asserts that the trial court's failure to change the venue of the trial due to wide-spread pre-trial publicity adverse to Petitioner denied his right to Due Process and to a fair trial; and (d) Petitioner asserts that the testimony of State witness, Lieutenant Harmison that Petitioner was incarcerated at the time of trial denied his right to Due Process and to a fair trial.

  However, on appeal of his habeas petition to the WVSCA, his Ground 10 claim was that *"[t]he Circuit Court of Berkeley County abused its discretion and disregarded the law* by failing to adjudicate the Petitioner's cumulative error claim." See ECF No. 52-23 at 45.  This is no longer a "straight up" claim that the circuit denied his right to a fair trial because of a myriad of trial errors (i.e., cumulative error); it is now a claim that the *habeas court erred* by not adjudicating his underlying claim of cumulative error. This claim is not exhausted.

- **Ground 12(a)** Petitioner's federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his . . . appellate counsel, when appellate counsel failed to: (a) present certain grounds on appeal that were obviously stronger than those presented. See ECF No. 13-1 at 5.

  This claim, obviously, was not raised on direct appeal.

  Petitioner raised this claim as Ground 12(a) in both his *pro se* and amended state habeas petitions with a federal basis. See ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100.

  On appeal of his habeas petition(s) to the WVSCA, as Ground 7(r), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (r) present certain grounds that were obviously stronger than those presented. See ECF No. 52-23 at 37 & 39 (emphasis added). Because this is no longer a "straight-up" claim of appellate counsel's ineffectiveness for not choosing the strongest issues for appeal, but rather, now a claim that the *habeas court erred* by denying him relief on the underlying IAC claim, Ground 12(a) is not exhausted.

- **Ground 12(b)** Petitioner's federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his . . . appellate counsel, when appellate counsel failed to: (b) present federal constitutional questions or cite to United States Supreme Court authority**.** See ECF No. 13-1 at 5.

  This claim, obviously, was not raised on direct appeal.

  Nor was it ever raised in either Prophet's *pro se* or amended state habeas petitions; in each of those petitions, as Ground 12, the only grounds of appellate counsel's ineffectiveness Petitioner raised were for (a) failing to present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented, and (b) failing to present federal constitutional questions to the WVSCA or citing to United States Supreme Court constitutional law. ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100.

  On appeal of his habeas petition to the WVSCA, as Ground 7(t), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (t) pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor listed and described in points 4 - 12 above, which pinpoint citations were critical in order for the appellate court to make a thorough, fair, and accurate adjudication of the issue being adjudicated. See ECF No. 52-

23 at 37 & 39. Not only was this claim never raised in the habeas court, it is not even a claim of appellate counsel's ineffectiveness; instead, it is a claim that the *habeas court erred* by denying him relief on the underlying IAC claim. Therefore, Ground 12(d) is not exhausted.

- **Ground 12(c):** Petitioner's federal constitutional rights to due process and the effective assistance of counsel were violated when appellate counsel failed to: (c) pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor listed and described in Ground 4 above, which pinpoint citations were critical in order for the appellate court to make a thorough, fair, and accurate adjudication of Petitioner's appeal. See ECF No. 13-1 at 5.

  This claim, obviously, was not raised on direct appeal.

  Nor was it ever raised in his *pro se* or amended state habeas petitions. As Ground 12 in both his *pro se* habeas petition and amended habeas petition, Petitioner raised a claim of ineffective assistance of appellate counsel with a federal basis, but for only two sub-grounds, for (a) failing to present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented, and (b) failing to present federal constitutional questions to the WVSCA or citing to United States Supreme Court constitutional law. ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100.

  On appeal of his habeas petition(s) to the WVSCA, as Ground 7(t), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (t) pinpoint with accurate, appropriate, and specific citations to the trial record the post-Miranda silence remarks of the prosecutor listed and described in points 4 - 12 above, which pinpoint citations were critical in order for the appellate court to make a thorough, fair, and accurate adjudication of the issue being adjudicated. See ECF No. 52-23 at 37 & 39. Not only was this claim never raised in the habeas court, it is not even a claim of appellate counsel's ineffectiveness; instead, it is a claim that the *habeas court erred* by denying him relief on the underlying IAC claim. Thus, Ground 12(d) is not exhausted, because it was raised for the first time in Petitioner's federal petition.

- **Ground 12(d):** Petitioner's federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his . . . appellate counsel, when appellate counsel failed to: (d) advance in Petitioner's direct appeal brief the federal constitutional claim that the trial court prejudicially refused to strike two challenged jurors for cause. See ECF No. 13-1 at 5 – 6.

  This claim is both an explicitly-raised claim in Prophet's § 2254 petition [see Ground 12(d)], and also an implicitly-raised claim, cited by Prophet as the reason he did not raise his Ground 2 claim (trial court's improper failure to strike challenged jurors) on appeal. See ECF No. 13 at 8. Therefore, an exhaustion analysis will be conducted on the claim as an explicitly-raised claim first.

This claim, obviously, was not raised on direct appeal.

In Ground 12 of Petitioner's *pro se* and amended petitions, the only allegations of appellate counsel's ineffectiveness were that his state and federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, when appellate counsel failed to (a) present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented and failed to (b) present federal constitutional questions to the WVSCA, or cite to United States Supreme Court constitutional law.  See ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100. This claim was not raised.

On the appeal of his habeas petition(s) to the WVSCA, in Ground 7(u), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (u) advance Petitioner's federal constitutional claim of the trial court's prejudicial refusal to strike two challenged jurors for cause. See ECF No. 52-23 at 37 & 39. Not only was this underlying claim never raised in the habeas court, it is not even a claim of appellate counsel's ineffectiveness; instead, it is a claim that the *habeas court* erred by denying him relief on the underlying IAC claim. Accordingly, Petitioner's explicitly-raised Ground 12(d) claim has not been exhausted, because it was raised for the first time in Petitioner's federal petition.

When analyzing this claim as an implicitly-raised claim, [see ECF No. 13 at 8], as noted *supra*, it is likewise apparent that it was not raised on direct appeal or in his Ground 12 IAC of appellate counsel claims in either his  *pro se* or amended habeas petitions.

On the appeal of his habeas petition to the WVSCA, in Ground 7(v), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (v) include and incorporate each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." ECF No. 52-23 at 37 & 39 – 40. Because the claim of the circuit court's refusal to strike two challenged jurors for cause was raised as Ground 2 in his *pro se* petition, had this claim been raised on appeal as a "straight-up" claim of appellate counsel's ineffectiveness, it could have been "brought back in" by the Ground 7(v) "catch-all" claim.  However, the claim raised on appeal was no longer that appellate counsel was ineffective for failing to challenge the circuit court's refusal to strike two jurors for cause, it was now a claim that the *habeas court erred* by denying Petitioner relief on his claim that appellate counsel failed to raise each and every assertion of error in Grounds 1 – 9 of Petitioner's *pro se* habeas petition on appeal. Therefore, the implicitly-raised Ground 12(d) is not exhausted.

- **Ground 12(e)** Petitioner's federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his . . . appellate counsel, when appellate counsel failed to: (e) include and incorporate in Petitioner's appeal each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition. See ECF No. 13-1 at 6.

    This claim, obviously, was not raised on direct appeal.

    Nor was it ever raised in Prophet's *pro se* or amended habeas petitions. As Ground 12 in both his *pro se* habeas petition and amended habeas petition, Petitioner raised a claim of ineffective assistance of appellate counsel with a federal basis, but for only two sub-grounds, for: (a) failing to present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented, and (b) failing to present federal constitutional questions to the WVSCA or citing to United States Supreme Court constitutional law. ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100. This claim was not raised.

    On appeal of his habeas petition, as Ground 7(v), Petitioner asserted that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus*, as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his appellate counsel [for failing to]: (v) to include and incorporate each and every individual and collective assertion and argument of error made in Grounds 1 - 9 of Petitioner's *pro se* habeas petition." ECF No. 52-23 at 37 & 39 - 40.  Not only was this claim never raised in the habeas court, it is not even a claim of appellate counsel's ineffectiveness, because Petitioner has rendered it a claim that the *habeas court erred* by denying him relief on the underlying claim of appellate counsel's ineffectiveness.  Therefore, this claim, with all its (sub-grounds 12(e)(1) – 12(e)(9)), is not exhausted.

- **Ground 12(f):** Appellate counsel rendered ineffective assistance by failing to challenge the circuit court's refusal to transfer Petitioner's criminal trial due to prejudicial pretrial publicity.

    This claim, obviously, was not raised on direct appeal.

    This claim was raised in Petitioner's federal petition both implicitly (as the reason he did not raise his underlying Ground 1 claim: trial court erred in not granting change of venue for prejudicial pre-trial publicity) [see ECF Nos. 13 at 6] and also indirectly, through Petitioner's Ground 12(e) "catch-all" claim, that his  "federal constitutional rights to due process of law, and to the effective assistance of counsel were violated, under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, by the ineffective assistance of his state-appointed appellate counsel, when appellate counsel failed to: (e) include and incorporate in Petitioner's appeal each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." See ECF No. 13-1 at 5 - 6.

As noted *supra*, Ground 12 in both his *pro se* habeas petition and amended habeas petition, Petitioner raised a claim of appellate counsel's ineffective assistance with a federal basis, but for only two sub-grounds, for: (a) failing to present certain grounds in Petitioner's direct appeal that were obviously stronger than those presented, and (b) failing to present federal constitutional questions to the WVSCA or citing to United States Supreme Court constitutional law. ECF No. 52-16 at 158 – 59; see also ECF No. 52-18 at 100. This claim was not raised.

On the appeal of his habeas petition to the WVSCA, in Ground 7(v), Petitioner alleged that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated under the United States Constitution's Fifth, Sixth, and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 10 and 14, by the ineffective assistance of his . . . appellate counsel . . . [who] failed to: (v) include and incorporate each and every individual and collective assertion and argument of error made in Grounds 1 – 9 of Petitioner's *pro se* habeas petition." ECF No. 52-23 at 37 & 39 – 40. Because the claim of the circuit court's refusal to grant a change of venue for prejudicial pretrial publicity was raised as Ground 1 in his *pro se* petition, had this claim been raised on appeal of the habeas as either the implicitly-raised "straight-up" claim of appellate counsel's ineffectiveness or the indirectly-raised claim, it could have been considered "brought back in" by the Ground 7(v) "catch-all" claim. However, the claim raised on appeal was no longer that appellate counsel was ineffective for failing to challenge on appeal the trial court's refusal to grant a change of venue for prejudicial pre-trial publicity, it was now a claim that the *habeas court erred* by denying Petitioner relief on his claim that appellate counsel was ineffective for failing to include each and every assertion of error made in Grounds 1 – 9 of Petitioner's *pro se* petition. Therefore, Ground 12(g) is not exhausted.

- **Ground 13**: Petitioner's federal constitutional rights to due process of law, and to the equal protection of the law were violated, under the United States Constitution's Fifth and Fourteenth Amendments, when the . . . [WVSCA] violated its state constitution so as to deny the Petitioner a state-created liberty interest, and when it failed to provide the Petitioner meaningful appellate *and post-conviction collateral* review. See ECF No. 13-1 at 6.

This claim was not raised on appeal.

As Ground 13 in both his *pro se* and amended habeas petitions, Petitioner asserted that his federal constitutional rights to due process and equal protection were violated when the WVSCA failed to give him meaningful *appellate* review. See 52-16 at 160; see also ECF No. 52-18 at 102.

On appeal of his habeas petition(s) to the WVSCA, as Ground 8, Petitioner asserted that *"[t]he Circuit Court of Berkeley County abused its discretion, arrived at a clearly erroneous finding, and disregarded the law, by denying the relief requested in Petitioner's petition for writ of habeas corpus,* as Petitioner's state and federal constitutional rights were clearly violated, under the United States Constitution's Fifth and Fourteenth Amendments, and under the West Virginia Constitution's Article III, §§ 3, 10, and Article VIII, § 4, when the . . . [WVSCA] violated its state constitution so as to

deny the Petitioner a state-created liberty interest when it failed to provide the Petitioner meaningful *appellate* review." See ECF No. 52-23 at 41 (emphasis added).  Again, he made no mention of "meaningful . . . *post-conviction collateral* review." Moreover, the claim raised on appeal was no longer the "straight-up" claim that the WVSCA violated the Petitioner's rights under the West Virginia Constitution when it failed to provide the Petitioner meaningful appellate (let alone post-conviction collateral) review. It was now a claim that the *habeas court erred* by denying him relief on his underlying claim regarding the WVSCA's failure to provide meaningful appellate review. This is not the same claim that Petitioner raises here. Accordingly, Ground 13 is not exhausted.

Consequently, upon a thorough review of the record, it is apparent that Petitioner has failed to exhaust his state remedies with regards to *any* of the remaining claims in his § 2254 petition. As such, despite Petitioner's unsupported allegations that he has exhausted or even partially exhausted his claims, this petition must be dismissed, because absent a valid excuse, a state prisoner must exhaust his remedies in state court before seeking federal habeas corpus relief.  See  28 U.S.C. §2254(b).  It is Petitioner's burden to prove exhaustion, and he has failed to demonstrate that he did so.  Breard v. Pruett, *supra* at 619.  Although many of the claims raised in the instant petition are very similar to claims raised below, that is insufficient, under Anderson v. Harless, *supra* at 6 ("It is not enough that all the facts necessary to support the federal claim were before the state court or that a somewhat similar state-claim was made.").  "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, *supra* at 619.

However, the statute of limitations for Petitioner to timely re-file his federal habeas petition has long since expired.[43] As previously established, the Petitioner filed this case on

---

[43] In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ["AEDPA"] was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion. 28 U.S.C. § 2244(d). The limitation period shall run from the latest of:

    A) the date on which the judgment of conviction becomes final by the conclusion of direct review of the expiration of the time for seeking such review;

    B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

August 24, 2016. Because the time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001), the one-year federal time limit has long since elapsed and, as noted by the

C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Where a federal prisoner does not file a petition for writ of certiorari with the United States Supreme Court, the one year limitation begins to run when the time for filing a writ - 90 days - expires.

In the present case, Petitioner was convicted on July 20, 2012 and sentenced on September 12, 2012. The WVSCA entered its decision affirming his convictions on June 5, 2014; mandate on that decision issued on September 2, 2014. On September 8, 2014, Prophet timely petitioned the United States Supreme Court for a writ of *certiorari*; *certiorari* was denied on November 17, 2014.  Although Prophet subsequently petitioned the United States Supreme Court for rehearing, that has no effect on the timeliness analysis. See Sup. Ct. R. 16.3 ("The order of denial [of *certiorari*] will not be suspended pending disposition of a petition for rehearing except by order of the Court or a Justice."). Finality for purposes of application of new law attaches at the denial of *certiorari*, that is, not upon denial of a petition for rehearing or the expiration of the period for filing for rehearing. See Clay v. United States, 537 U.S. 522, 527 (2003) (stating that "[f]inality attaches when this  Court . . . denies a petition for a writ of certiorari," without mentioning rehearing); cf Giesberg v. Cockrell, 288 F.3d 268 (5th Cir. 2002) (holding, in the habeas context, that a case becomes final for purposes of the Antiterrorism and Effective Death Penalty Act's limitations period with the denial of *certiorari*, not the denial of rehearing); Robinson v. United States, 416 F.3d 645 (7th Cir. 2005) (same, for § 2255 proceedings); see also Rosa v. United States, 785 F.3d 856 (2nd Cir. 2015).

Thus, Prophet's judgment and convictions became final on November 17, 2014 when *certiorari* was denied. Pursuant to Federal Rule of Civil Procedure 6(a), the clock on the one-year period of limitation began to run the following day, on November 18, 2014. See also Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

Prophet filed a *pro se* state habeas corpus petition on February 2, 2015, tolling the clock on his one-year period of limitation after only 76 days had run. See 28 U.S.C. § 2244(d)(2) [providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."]; Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  Through counsel, he filed an amended petition on May 12, 2015. The circuit court denied the habeas petition on October 28, 2015. Prophet timely appealed the denial of the same to the WVSCA on November 10, 2015; the WVSCA's decision affirming the circuit court was issued on June 21, 2016. Mandate issued on that decision on July 22, 2016, rendering it final. Although Prophet petitioned the United States for a writ of *certiorari*, seeking review of the WVSCA's decision on his habeas appeal, such a petition does not affect the timeliness analysis, because unlike with direct review, at that point, an application for state post-conviction review no longer existed because an "application for state postconviction review is . . . not 'pending' after the state's post-conviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for *certiorari*." Lawrence v. Florida, 549 U.S. 327, 332 (2007). Therefore, again adding one day pursuant to Fed.R.Civ.P. 6(a) the clock began to run again on Prophet's one-year period of limitation on July 23, 2016.

Prophet filed his federal habeas petition on August 24, 2016, after an additional 32 days of the one-year period of limitation had run, for a total of 108 days. The time in which a federal habeas petition is pending does not toll the running of the statute of limitations under 28 U.S.C. § 2244(d)(2), see Duncan v. Walker, 533 U.S. 167 (2001). Accordingly, the remaining 257 days of his one-year period of limitations expired on May 9, 2017.

Respondent, if the petition were dismissed, Petitioner would be time-barred from refiling his §

2254 petition.

A habeas petitioner has not exhausted his remedies available with the State if he has the

right under the law of the State to assert, by any available procedure, the question presented.

Here, technically, Petitioner still has the option of returning to the WVSCA, complying with the

procedural rules to file an original jurisdiction petition there, and attempting to raise the claims

he originally raised in the circuit court but abandoned when he filed his appeal. Therefore,

petitioner does have State remedies available to him.

The undersigned acknowledges that in Rhines v. Weber, 544 U.S. 269 (2005), the

Supreme Court held that "rather than dismiss [a] petition . . . a district court might stay the

petition and hold it in abeyance while the petitioner returns to state court to exhaust his

previously unexhausted claims." Id. at 275 ("[S]tay and abeyance is only appropriate when the

district court determines there was good cause[44] for the petitioner's failure to exhaust his claims

first in state court. Moreover, even if a petitioner had good cause for that failure, the district court

would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly

meritless.").[45]

Although Rhines concerns the filing of "mixed" petitions, i.e., petitions that contain both

exhausted and unexhausted claims, the Supreme Court has suggested that the Rhines' stay and

abeyance standard could also apply to so-called "protective petitions," i.e., petitions containing

---

[44] Those circumstances include instances in which the petitioner has shown good cause for his failure to exhaust, that his unexhausted claims are potentially meritorious, and where there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

[45] The Court reasoned that if employed too frequently, a stay in advance would undermine the purposes of the AEDPA: (1) reducing delay in the execution of state and federal criminal sentences and (2) encouraging petitioners to seek relief from state courts in the first instance. Id. ("Staying a federal habeas petition frustrates AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.").

no exhausted claims filed prior to the completion of the exhaustion process to ensure future federal review, see Pace v. DiGuiglielmo, 544 U.S. 408 (2005).[46] Furthermore, the Fourth Circuit has held that in Pace, the Supreme Court "subsequently extended the Rhines rationale beyond mixed 2254 petitions." Hyman v. Keeler, 2011 WL 3489092, at *10 (4th Cir. Aug. 10, 2011). "The stay and abeyance procedure was recommended by the Pace [c]ourt without any discussion of whether the habeas petitioner was pursuing a mixed 2254 petition. To the contrary, the Pace decision appears to authorize the use of the stay and abeyance procedure under any circumstances that could warrant a state court resolution of a prisoner's claims." Id. (quoting Pace, 544 U.S. at 416, citing Heleva v. Brooks, 581 F.3d 187, 191-92 (3rd Cir. 2009).

Here, there is no suggestion that Petitioner has intentionally engaged in dilatory tactics. To the contrary, it is apparent that he attempted to exhaust: he timely filed a direct appeal; then a *pro se* habeas petition, followed by an amended petition through counsel, and finally, an appeal of that denial to the WVSCA.  It appears that the cause of Petitioner's failure to exhaust was his bungled attempt to procedurally succeed in filing an original jurisdiction petition with the WVSCA. Accordingly, Petitioner has shown good "cause" for not exhausting.  Nonetheless, even if the Court were to construe the instant petition as a "protective petition" to permit Petitioner to return to state court, the undersigned is of the opinion that a stay and abeyance is not warranted.  A careful review of Petitioner's claims reveals that they are plainly meritless. See Pace, at 417.

---

[46] In Pace, an opinion published just one week after Rhines, the Supreme Court suggested in dicta that a petitioner reasonably confused about whether a state filing would be timely could file a "protective" petition in federal court. Pace, 544 US at 416. Therefore, even though the Supreme Court did not explicitly state that the stay and abeyance procedure of Rhines applied to unmixed petitions, its suggestion that Rhines' stay and abeyance procedure could apply to an unmixed petition in that case clearly extended the Rhines' rationale beyond mixed petitions.

## IV.   <u>Recommendation</u>

For the reasons previously set forth, the undersigned recommends that the Respondent's Motion to Dismiss [ECF No. 53] be **GRANTED** and that the petition [ECF 13] be **DENIED** and **DISMISSED without prejudice** as unexhausted.

Further, the undersigned recommends that Petitioner's two pending motions, Clarified Motion for the Court to Expedite Review of the Matter of Exhaustion and Order the Respondent to Forthwith File an Answer Addressing the Allegations in Petitioner's § 2254 Petition [ECF No. 66] and  Motion for the District Judge to Direct the Magistrate Judge to Expedite Review of the Matter of Exhaustion and Order the Respondent to Forthwith File an Answer Addressing the Allegations in Petitioner's § 2254 Petition [ECF No. 67] be **DENIED as moot**.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections should also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th  Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

 The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court.  The Clerk is directed to terminate the Magistrate Judge's association with this case.

94

DATED: February 6, 2018

/s/ *Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE